KIRKPATRICK W. DILLING *et al.*, Plaintiffs-Appellants, v. WILLIAM SERGIO *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—92—4011

Opinion filed May 6, 1994.

192

Ronald C. Nesmith and Michael J. Lennard, both of Dilling & Dilling, of Chicago, for appellants.

Champ W. Davis, Jr., and Laura Beth Miller, both of Davis, Mannix & McGrath, of Chicago, for appellees.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

This is an appeal by the plaintiffs, Kirkpatrick W. Dilling and Dilling and Dilling, an Illinois attorney and his law firm, from an order dismissing their breach of contract claim against clients to recover unpaid fees for legal services. The complaint was dismissed by the trial judge on the ground that the plaintiff failed to establish that Illinois had jurisdiction over the defendants.

The complaint, which claimed in excess of $17,000 for legal fees, was filed against William Sergio and Peter Spiegel and Sergio and Spiegel Television, Inc. (S&S). William Sergio and Peter Spiegel filed special appearances and motions to quash service of process. S&S filed an appearance and answer. The defendants' motion to quash was supported by their own affidavits; and the plaintiffs submitted two affidavits of Kirkpatrick Dilling and answers to interrogatories made by William Sergio and Peter Spiegel. The issue, therefore, was presented to the judge on the pleadings and the affidavits of the parties. After a hearing, the judge granted the defendants' motions to quash service. He held that the plaintiffs had failed to establish that the "contact" the defendants had with Illinois would support a finding that Illinois had personal jurisdiction over the defendants. The order recited that the "motion to quash [service] was granted without prejudice to plaintiffs for leave to file an action in another forum."

The plaintiffs subsequently filed a motion for a special finding pursuant to Supreme Court Rule 304(a). (134 Ill. 2d R. 304(a).) The motion alleged that S&S was in bankruptcy and had no assets; in view of that fact, the plaintiffs would not proceed further against S&S. The judge allowed the motion and made a special finding under Rule 304(a) (134 Ill. 2d R. 304(a)) which permitted the plaintiffs to appeal.

The following facts appear from the affidavits, the answers to interrogatories, the complaint and documents attached to the affidavits and the complaint. William Sergio and Peter Spiegel are two marketers who incorporated S&S under the laws of Delaware to produce half-hour television programs, referred to as "showmercials." Sergio and Spiegel, in equal shares, owned S&S, which is only one of their corporations. S&S operated in California, and through S&S Sergio and Spiegel produced showmercials to market numerous products. S&S directly promoted the product Oxywhite. Another product, Oncor, was promoted by another corporation, Sergio & Spiegel Television for Oncor, Inc., incorporated under the laws of Nevada. At the time the complaint was filed, Spiegel was a resident of California and Sergio was a resident of Florida.

The Dilling law firm, based in Chicago, also operated a California office. Kirkpatrick W. Dilling first met Sergio and Spiegel at the Pasadena Hilton Hotel in California. Sergio and Spiegel introduced themselves to Dilling as "officer[s] of Sergio & Spiegel Television, Inc." S&S hired the plaintiff to render a legal opinion regarding a product to be marketed by S&S. A review of the plaintiffs' bills indicates that this legal opinion was rendered for the product Oxy-

white. The defendants contend that the legal services were rendered on behalf of S&S, the corporation that promoted Oxywhite. Each of the defendants' affidavits states, "I did not hire the plaintiff to represent or render any legal services to me."

While the plaintiffs were working on the legal opinion for Oxywhite, a postal investigation arose concerning the marketing of the other product, Oncor. According to Kirkpatrick Dilling's affidavit, Sergio and Spiegel jointly telephoned him at his Chicago office on December 7, 1990, stating that "the U.S. Postal Service was holding up their mail at a box they held in Phoenix, Arizona." They also stated that the Postal Service was threatening that the withholding of their mail would be followed by legal action in the Phoenix Federal court. The affidavit stated that Dilling "conferred by telephone on such date with both Spiegel and Sergio, who then and there individually and jointly formally retained plaintiff and his firm to render any legal services necessary in conjunction with the matter." During the conversation, Dilling accepted the retention and informed the defendants of his fee rates. On December 11, 1990, the U.S. Postal Service commenced an injunction proceeding. The Postal Service's complaint named as defendants, "Sergio & Spiegel Television for Oncor Inc., a Nevada corporation," and "William Sergio, Peter Spiegel, individuals." Dilling prepared for the Phoenix hearing at his Chicago office and then flew to Phoenix for the preliminary injunction hearing.

Dilling's affidavit alleged that he "continued to represent both Sergio and Spiegel, individually, until January 28, 1991, when plaintiffs' legal services were terminated." According to a letter from Sergio, written on Sergio & Spiegel Television for Oncor, Inc. stationery, Dilling's services were terminated because the defendants made a decision to settle the Postal Service investigation using a Washington-based attorney.

The plaintiffs' claim for fees includes work done in connection with the marketing of Oxywhite and for the Federal investigation involving Oncor.

At the hearing on the motions to quash, the defendants first argued that they were acting solely as agents of S&S, and, therefore, were protected by the fiduciary shield doctrine.[1] Alternatively, they argued that, even if they were deemed to be acting as individuals, there were insufficient contacts with Illinois to support the exercise of personal jurisdiction. The defendants emphasized that, at most, they only entered into a contract with an Illinois law firm, which

---

[1]The fiduciary shield doctrine will be discussed later in this opinion.

also had offices in California. According to the defendants, the relevant Illinois contacts amounted to telephone conferences between the parties from California to Illinois; the legal proceedings took place in Phoenix.

The plaintiffs argued that sufficient contacts existed to confer personal jurisdiction, and that by hiring Illinois attorneys, the defendants sought the benefit and protection of Illinois law. The plaintiffs also relied on the fact that a majority of the legal work occurred in Illinois and that the defendants were individually named in the Postal Service complaint.

Where personal jurisdiction is challenged, the party asserting personal jurisdiction has the burden of establishing it by a preponderance of the evidence. (*Finnegan v. Les Pourvoiries Fortier, Inc.* (1990), 205 Ill. App. 3d 17, 562 N.E.2d 989.) A reviewing court may not disturb the trial judge's findings unless they are against the manifest weight of the evidence. (*Finnegan*, 205 Ill. App. 3d at 25.) The issue, therefore, is whether the judge's findings are against the manifest weight of the evidence.

The plaintiffs maintain that they have established that they meet the requirements of the Illinois long-arm statute (Ill. Rev. Stat. 1991, ch. 110, pars. 2—209(a)(1), (a)(7)) which provides, in part, that persons submit themselves to the jurisdiction of Illinois if they transact any business within Illinois or make or perform any contract or promise substantially connected with Illinois.

■ In *Rollins v. Ellwood* (1990), 141 Ill. 2d 244, 565 N.E.2d 1302, our supreme court emphasized that the Illinois Constitution contains its own guarantee of due process and articulated a new jurisdictional standard:

> "[W]hen we *** consider whether the Illinois courts can assert personal jurisdiction over a nonresident defendant by means of the long-arm statute, we will consider not only the literal meaning of the text of [the long-arm] statute, and not only the evolving standards of the United States Constitution's guarantee of due process, but also the constraints imposed on jurisdiction by the Illinois Constitution's guarantee of due process. Jurisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins*, 141 Ill. 2d at 275.

*Rollins* makes it clear that the inquiry into the right of Illinois courts to assume jurisdiction over a nonresident defendant does not end with the determination that the nonresident has performed any of the acts described in the long-arm statute. (*Rollins*, 141 Ill. 2d at

275-76.) Thus, even if the defendants did enter into a contract with the plaintiffs, that fact alone does not establish jurisdiction over them.

■ Before an Illinois court may exercise *in personam* jurisdiction over a nonresident, due process requires that the nonresident defendant have certain minimum contacts with Illinois such that maintenance of the suit there does not offend "traditional notions of fair play and substantial justice." (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 2d 95, 102, 66 S. Ct. 154, 158.) Three criteria must be considered to determine whether the court's exercise of jurisdiction satisfies due process: (1) whether the nonresident defendant had minimum contacts with the forum State such that he had fair warning that he might be required to defend himself there; (2) whether the action arose out of or relates to the defendant's contact with the forum; and (3) whether it is reasonable to require the defendant to litigate in the forum State. *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 471-78, 85 L. Ed. 2d 528, 540-44, 105 S. Ct. 2174, 2181-85.

The plaintiffs contend that Sergio and Spiegel either "transacted business" or entered into a "contract substantially connected" with Illinois and, thereby, have submitted themselves to the jurisdiction of the Illinois courts. While even a single transaction may suffice for jurisdiction, that transaction must: (1) give rise to the cause of action, and (2) be one by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State and voluntarily invokes the benefits and protections of Illinois law. *Conroy v. Andeck Resources '81 Year-End Ltd.* (1985), 137 Ill. App. 3d 375, 484 N.E.2d 525.

■ The determination of whether a defendant sufficiently transacted business in Illinois so as to avail himself of the benefits of Illinois requires consideration of several factors, including (1) who initiated the transaction, (2) where the contract was entered into, and (3) where the performance of the contract was to take place. *Gordon v. Tow* (1986), 148 Ill. App. 3d 275, 498 N.E.2d 718 (affirmance of dismissal of complaint for lack of personal jurisdiction where plaintiff contacted and met nonresident defendant in Rhode Island, limited partnership agreement was entered into there, and performance of agreement was to take place there).

■ We first consider the plaintiffs' claim concerning Oxywhite. Kirkpatrick Dilling initially met Sergio and Spiegel in California. It is undisputed that at that meeting, Sergio and Spiegel introduced themselves to the plaintiff *as officers* of Sergio & Spiegel Television, Inc. All later contacts between Dilling, Sergio and Spiegel regarding Dilling's services flowed from that initial meeting.

The affidavits do not indicate who initiated the first contact between the parties. The defendants do state that they, as officers of the corporation, hired the plaintiff to render a legal opinion for one of the products they were promoting, Oxywhite. (The plaintiffs' bill reflects that these services were rendered between December 5 through 19, 1990.) According to the defendants' affidavits, they did not hire the plaintiff to represent them personally, but solely on behalf of the corporation. All relevant contacts relating to the Oxywhite contract, therefore, took place in California. Accordingly, we find that the plaintiffs have failed to establish minimum contacts in Illinois in relation to the Oxywhite product by a preponderance of the evidence and that the trial judge's ruling was not against the manifest weight of the evidence.

We now turn to the jurisdictional contacts involved with the Oncor product. Two days after Dilling began work on the Oxywhite matter, a Postal Service and Federal Trade Commission (FTC) investigation arose regarding the Oncor product, promoted by another corporation, Sergio & Spiegel Television for Oncor, Inc. On December 7, 1990, Sergio and Spiegel jointly telephoned the plaintiff on behalf of the corporation to request his legal services in the Postal Service and FTC proceedings.

Dilling's affidavits do not contest that the initial meeting between him and the defendants took place in California. Instead, Dilling alleges that, in the Postal Service and FTC proceedings, the defendants initiated the retention by calling him at his Chicago office. Dilling asserts that he represented Sergio and Spiegel in both their individual and corporate capacities. As evidence of his representation of the defendants individually, he attached to his counteraffidavit a copy of the first page of the Postal Service complaint for injunctive relief, filed in the Federal District Court of Arizona. This complaint is captioned, "United States Postal Service, Plaintiff, vs. Sergio & Spiegel Television for Oncor, Inc., a Nevada corporation, *** William Sergio, Peter Spiegel, *** individuals."

The plaintiffs rely on the manner in which the defendants were named in the Postal Service complaint as dispositive of the fact that Dilling was retained to represent the defendants Sergio and Spiegel individually. The face of the complaint, however, does not controvert the fact that the defendants acted as corporate officers when they hired Dilling nor does it prove that the defendants hired the plaintiffs to represent them as individuals. Although factual conflicts arising from the affidavits must be resolved in favor of the plaintiff (*Financial Management Services, Inc. v. Sibilsky & Sibilsky, Inc.* (1985), 130 Ill. App. 3d 826, 474 N.E.2d 1297), in order to create a factual conflict, the counteraffidavit must set forth "with particularity facts inconsis-

tent with defendant's affidavit." (*Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 249, 421 N.E.2d 231.) In his affidavit, Dilling said that he conferred by telephone on December 7, 1990, "with both Spiegel and Sergio, who then and there individually and jointly formally retained plaintiff and his firm to render any legal services necessary in connection with the matter in question." In our judgment, that conclusional statement does not meet the requirements of *Kutner v. DeMassa*.

The record is devoid of any indication why the defendants were named as individuals in the Postal Service complaint, the nature of the complaint for injunctive relief or the FTC investigation, or whether the defendants were named as officers of a corporation, who might be personally liable. We find that the plaintiff's affidavit and the caption of the Postal Service complaint do not contradict the allegations of the defendants that they never individually entered into an agreement with the plaintiffs to pay for the legal expenses of S&S and that the only contact they had with the plaintiffs was solely in their capacity as agents of S&S.

The plaintiffs also argue that the defendants may not rely on the caption of the Postal Service complaint to prove that they were acting as agents of S&S because, the plaintiffs maintain, the caption of the complaint names as a defendant Sergio and Spiegel Television for Oncor, Inc. The plaintiffs argue that Sergio and Spiegel Television for Oncor, Inc., is a corporation separate and distinct from S&S. That argument, of course, cuts both ways. If Sergio and Spiegel Television for Oncor, Inc., was considered separate and distinct from S&S, why have the plaintiffs not sued Sergio and Spiegel Television for Oncor, Inc.?

We emphasize that the trial judge passed on the case as it was presented to him. The plaintiffs insisted on an expedited hearing, and they insisted that the matter be heard by the trial judge solely on the affidavits and the pleadings. In sum, the trial judge was called upon to decide whether the plaintiffs established that their contract of employment was "substantially connected with [Illinois]." (Ill. Rev. Stat. 1991, ch. 110, par. 2—209(a)(7).) The trial judge concluded, based on the record before him, that the plaintiffs had failed to establish that the defendants had sufficient contacts with the plaintiff in Illinois that would support the assertion of an Illinois court of jurisdiction over the defendants. We cannot say that his conclusion is against the manifest weight of the evidence.

The plaintiffs rely on *Ores v. Kennedy* (1991), 218 Ill. App. 3d 866, 578 N.E.2d 1139, *appeal allowed* (1991), 142 Ill. 2d 656, 584 N.E.2d 131, and *Rose v. Franchetti* (7th Cir. 1992), 979 F.2d 81. In *Ores* the plaintiff sued a law firm for legal malpractice and the law firm sued

Golden, a Texas lawyer, for contribution. The trial judge allowed Golden's motion to dismiss for lack of jurisdiction, and the appellate court reversed. The evidence showed that Golden had been contacted by a member of the defendant law firm to have an estate admitted to probate in Texas. Golden corresponded and had telephone conversations with the plaintiffs, with attorneys at the defendant law firm and with a trust department at the First National Bank of Chicago. He participated in conference calls with the plaintiff on four days in December of 1982 concerning the estate's sale of stock. He also participated in telephone conferences with the plaintiff on six days in 1983, again concerning the estate's sale of stock. In a letter and a conference call he sought advice from members of the defendant law firm regarding the estate tax liability as a consequence of the stock sale. He also had two other similar telephone calls with an attorney from the defendant law firm. Later there were several other telephone calls in which Golden participated regarding investments and the stock. Golden sent a letter to the Continental Bank in Chicago regarding letters necessary to complete a stock transfer. Golden billed the plaintiff not only for his time spent on numerous calls and correspondence with the plaintiff, but for correspondence and calls he had with the Illinois banks.

In *Rose* the trial judge denied a motion to dismiss on the ground of lack of jurisdiction and the appellate court affirmed. The principal issue in *Rose* was whether an amendment to the long-arm statute was retroactive. The defendant did not argue that the trial judge's factual conclusions were against the manifest weight of the evidence.

Both cases cited by the plaintiffs are factually wide of the mark in this case. In sum, the trial judge was called upon to decide whether the plaintiffs established that their contract of employment was "substantially connected" with Illinois. Ill. Rev. Stat. 1991, ch. 110, par. 2—209(a)(7).

The trial judge held that it was unnecessary for him to determine the applicability of the fiduciary shield doctrine, which provides that if an individual has contact with a State only by virtue of his acts as a fiduciary of a corporation, he may be shielded from Illinois' exercise of jurisdiction over him personally on the basis of that conduct. (*Rollins*, 141 Ill. 2d at 276.) In view of our agreement with the trial judge on his finding that the plaintiffs had not established personal jurisdiction over the defendants, we need not pass on this question.

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

RAKOWSKI and GIANNIS, JJ., concur.