TCA INTERNATIONAL, INC., Plaintiff-Appellant, v. B and B CUSTOM AUTO, INC., d/b/a J and B Marketing, a/k/a Automotive Stylin' Warehouse, Defendant-Appellee.

First District (2nd Division)   No. 1—98—0252

Opinion filed September 22, 1998.

Edward S. Margolis, of Teller, Levit & Silvertrust, P.C., of Chicago, for appellant.

Michael J. Hayes and John T. Roache, both of Gardner, Carton & Douglas, of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff TCA International, Inc. (TCA), appeals from an order of the circuit court of Cook County granting the motion of defendant B&B Custom Auto, Inc. (J&B), to quash service and dismiss the action for lack of personal jurisdiction. We reverse and remand.

## FACTS

In September 1997 TCA filed an action against J&B in the circuit court for breach of contract. TCA, an Illinois corporation in the business of sale of automobile accessories, alleged in its complaint that J&B was "a New Jersey corporation which transacted business in the State of Illinois and in other States including New Jersey purchasing and selling automobile parts and accessories." Plaintiff alleged that J&B placed telephone orders with TCA at TCA's offices in Glenview, Illinois, in response to which TCA shipped merchandise to J&B "directly or indirectly from suppliers, both locally and internationally." It alleged that J&B had breached its contract with TCA by failing to pay for products it had ordered and which TCA had caused to be shipped to it from TCA's supplier in France. Invoices listing TCA's address in Glenview, Illinois, were attached to the complaint.

In October J&B entered a special and limited appearance under

section 2—301(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2—301 (West 1994)) "for the sole purpose of objecting to the personal jurisdiction of the Court over [J&B]." J&B moved to dismiss the action and quash service, arguing that Illinois could not exercise jurisdiction over it because it was merely a "passive," not an "active," purchaser, and it did not have sufficient contacts with this state.

In support of its motion, J&B attached an affidavit of its secretary and treasurer, Belfield Bovell. In his affidavit Bovell averred that J&B was a "small warehouse distributor" (5000-square-foot warehouse) of automotive accessories to car dealerships and retail stores located primarily in New Jersey, with some active accounts in New York and Connecticut. Bovell stated that J&B did not and never had maintained an office, bank account, mail drop or telephone number in Illinois; it was not licensed to do business in Illinois; and it did not employ any individuals in Illinois. He averred that although he did send J&B's payments to a John Schelthoff, at the latter's request, Schelthoff informed him that he would forward the payments "to TCA in France."

Bovell stated that he first became aware of TCA's products while attending the Specialty Equipment Market Association (SEMA) trade show in Las Vegas, Nevada, in October 1995. At the SEMA show he met Schelthoff, who introduced himself as a sales representative for TCA. Bovell averred that Schelthoff told him TCA "was an automotive accessory manufacturing company located in France. He also gave *** the impression that he was the only TCA representative in the United States." Bovell stated that Schelthoff took Bovell's card but he (Schelthoff) did not have any business cards or brochures. Schelthoff telephoned him (Bovell) three weeks later to inquire whether J&B still had any interest in distributing TCA's products and later sent him TCA's catalogues and brochures.

J&B subsequently placed several orders through Schelthoff for products shown in TCA's catalogues. Bovell averred that J&B never ordered goods that were to be specially manufactured, only stock items from TCA's catalogues. He stated that each time he placed an order, Schelthoff explained that delivery would take at least four weeks, since the goods would be shipped directly from TCA in France. Bovell stated that at all times he believed he was doing business with a foreign company. Bovell stated that all orders were shipped directly from TCA in France except that twice, when J&B's order was "backordered" in France, Schelthoff obtained the backordered goods "from other United States customers of TCA" and shipped them (a total of seven pieces in the two orders) directly to J&B. Bovell stated that J&B never negotiated with TCA regarding price; rather, Schelthoff offered

J&B better prices and an opportunity to be the exclusive New York/ New Jersey TCA distributor if J&B increased its orders.

According to Bovell, Schelthoff had discussed with him the possibility of using J&B's warehouse for its products because TCA did not have its own warehouse in the United States, which Bovell said on information and belief was still true. Bovell further stated that Schelthoff had visited J&B three times to check on delivery and shipment of items from France or to take inventory of TCA's goods stored in J&B's warehouse, but on information and belief, no J&B employee had ever visited Illinois for any J&B business purpose. He stated that two of Schelthoff's visits were at the request of a Jacques Djemad, who, according to what Schelthoff told Bovell, was an owner of TCA.

Bovell stated that in July 1996 he telephoned Schelthoff regarding a late delivery and shortly thereafter received a telephone call from Djemad to apologize and explain the delay. Djemad also called Bovell from France several times to discuss payment of J&B's outstanding invoices. When Bovell told Djemad in April 1997 that J&B was having difficulty "moving the goods" because of market conditions, Djemad stated that either J&B would have to return the goods or tender payment in full. Later, on a conference call with Djemad and Schelthoff, Bovell agreed to return the goods, but in June Schelthoff told him that Djemad had changed his mind and "J&B could expect to be sued for nonpayment on the outstanding invoices."

In November 1997 TCA filed a response to J&B's motion to dismiss, attaching the counteraffidavit of John Schelthoff, Jr., president of TCA. In his affidavit, Schelthoff stated that TCA was an Illinois corporation, located at all relevant times at 1775 Chestnut Avenue, Glenview, Illinois. TCA is the United States distributor of automobile accessories manufactured by TCA Distribution S.A., a French corporation (TCA France).

Schelthoff stated that he was in charge of the TCA booth at the SEMA show in Las Vegas in October 1995 and at all times he wore a required "Official Exhibitor Badge" (a copy of which was attached as an exhibit to Schelthoff's affidavit), which stated in part "John Schelthoff, TCA International, Inc., Glenview, IL." He also stated that he gave business cards and brochures (copies of which were also attached as exhibits to the affidavit) "to all people who visited the [TCA] booth and who requested such materials." Both his business card and the brochures listed TCA's office as Glenview, Illinois. He denied ever introducing himself to anyone as a sales representative for TCA France.

Schelthoff averred (contrary to Bovell's affidavit) that he (Schelthoff) did not telephone J&B after the trade show. Rather, he asserted,

Bovell contacted him "by telephone call into Plaintiff's office in the State of Illinois" professing his interest in becoming TCA's exclusive distributor in the northeast and requesting a price sheet. Schelthoff stated that he sent a price sheet to Bovell. That sheet, a copy of which was attached to Schelthoff's affidavit, listed TCA's address in Glenview, Illinois, and stated that prices included shipping costs "based on minimum order quantity. Other orders are shipped F.O.B. Glenview, IL." Schelthoff also stated that he later sent Bovell a copy of an article from Motor Trend magazine about TCA (a copy of which was attached as an exhibit to his affidavit) which listed TCA's address as Glenview, Illinois.

Schelthoff asserted that after he sent the price list to Bovell, Bovell "proceeded to order merchandise from [TCA] by placing orders by telephone into the State of Illinois." He averred that the products sold to J&B "required five to six weeks of lead time for manufacture" and "were manufactured to order for vehicles sold primarily in the United States," and that J&B was "billed from the State of Illinois" and "made payments into the State of Illinois." Attached as an exhibit to the affidavit were copies of J&B's cancelled checks, which reflected having been deposited into TCA's account at Citibank, FSB, in Chicago, Illinois. Another exhibit to Schelthoff's affidavit were invoices which, on their faces, identify TCA's location as Glenview, Illinois.

Schelthoff also stated that TCA warehoused merchandise at All Freight in Illinois and that J&B knew this fact. TCA supported this assertion with an exhibit attached to Schelthoff's affidavit of a copy of an invoice with instructions to All Freight to ship a particular piece of merchandise to J&B. Another exhibit to the affidavit was a bill of lading for shipment from All Freight, in Illinois, to J&B, with a J&B fax imprint thereon. Schelthoff maintained that the fact that J&B faxed a copy of the All Freight bill of lading back to TCA "manifest[ed] its full knowledge that the accessories were being shipped from Plaintiff's Illinois warehouse to the Defendant." Finally, Schelthoff stated that Djemad was an employee of TCA France but had never been "an officer, director, employee or agent" of TCA and "never had any authority to act for [TCA], or to negotiate a settlement with [J&B]."

J&B filed a reply brief with a supplemental affidavit from Bovell. Bovell averred in the supplemental affidavit that when J&B placed its orders with TCA, both parties contemplated that all of the goods would be manufactured in France and shipped directly to J&B in New Jersey. He stated that of the approximately 780 total parts J&B ordered, 760 were shipped directly from France to New Jersey, approximately 20 parts were never shipped, and a total of 7 parts were shipped from Illinois on two occasions when J&B was backordered. He stated that he

did not recall seeing Schelthoff wearing the exhibitor badge at the SEMA show, and Schelthoff did not mention at SEMA that TCA would be featured in a Motor Trend article. Bovell also averred that he had several telephone conversations with Djemad because of Schelthoff's statements that Djemad was the "TCA official who possessed the authority to resolve the issues in dispute between J&B and TCA, and that Schelthoff did not have such authority." Bovell attached as an exhibit to his affidavit a copy of J&B's telephone records for April 1997, which includes a telephone call to France.

In January 1998 the circuit court entered an order granting J&B's motion to dismiss. The court found it unnecessary to determine whether J&B committed one of the acts allowing Illinois to assert jurisdiction under its long-arm statute (735 ILCS 5/2—209 (West 1994)), because jurisdiction was barred by the due process clause of the Constitution of the State of Illinois. The court found J&B's contacts with Illinois to be "random, fortuitous or attenuated and insufficient to sanction the exercise of *in personam* jurisdiction over it by this Court."

TCA filed this appeal in January 1998. It argues that the circuit court erred in determining that J&B's contacts were insufficient to allow Illinois courts to assert jurisdiction over it. TCA asserts that J&B's purposeful placement of telephone orders into Illinois and making payments into Illinois constituted sufficient contacts for jurisdiction to attach in Illinois. For the reasons given below, we reverse and remand.

## ANALYSIS

### I. BURDEN OF PROOF AND STANDARD OF REVIEW

Two threshold issues we must reach before we can analyze the circuit court's ruling are (1) what was plaintiff's burden in the circuit court, and (2) what is our standard of review. Appellant has not addressed either question, notwithstanding that the latter omission contravenes the requirements of amended Supreme Court Rule 341(e)(3) (155 Ill. 2d R. 341(e)(3)) (appellant must include in his brief "a concise statement of the applicable standard of review for each issue, with citation to authority"). Appellee, on the other hand, asserts in its brief that the party seeking to impose jurisdiction (TCA) had to establish jurisdiction by a preponderance of the evidence at the circuit court level and that our review is governed by the manifest weight of the evidence standard. However, as shall be discussed, our review reveals an apparent chasmatic split of authority on these questions. Accordingly, notwithstanding appellant's failure to address these threshold issues, we feel compelled to do so rather than simply accepting appellee's unchallenged assertion.

A substantial line of authorities appears to adhere to the positions that (1) a plaintiff can rebut a challenge to a court's personal jurisdiction over a defendant by merely establishing a *prima facie* case of jurisdiction, and (2) any conflicts in the pleadings and affidavits must be resolved in the plaintiff's favor when deciding this issue. *E.g., D.S. America (East), Inc. v. Elmendorf Grafica, Inc.*, 274 Ill. App. 3d 643, 649, 654 N.E.2d 472, 476 (1995); *E.A. Cox Co. v. Road Savers International Corp.*, 271 Ill. App. 3d 144, 148, 648 N.E.2d 271, 274-75 (1995); *Alpert v. Bertsch*, 235 Ill. App. 3d 452, 459, 601 N.E.2d 1031, 1035 (1992); *Japax, Inc. v. Sodick Co.*, 186 Ill. App. 3d 656, 663, 542 N.E.2d 792, 796 (1989); *Wiles v. Morita Iron Works Co.*, 152 Ill. App. 3d 782, 504 N.E.2d 942 (1987), *rev'd on other grounds*, 125 Ill. 2d 144, 530 N.E.2d 1382 (1988); *Gordon v. Tow*, 148 Ill. App. 3d 275, 498 N.E.2d 718 (1986); *Mandalay Associates, Ltd. Partnership v. Hoffman*, 141 Ill. App. 3d 891, 491 N.E.2d 39 (1986); *Professional Group Travel, Ltd. v. Professional Seminar Consultants, Inc.*, 136 Ill. App. 3d 1084, 483 N.E.2d 1291 (1985); *Financial Management Services, Inc. v. Sibilsky & Sibilsky, Inc.*, 130 Ill. App. 3d 826, 474 N.E.2d 1297 (1985); *Kutner v. DeMassa*, 96 Ill. App. 3d 243, 247, 421 N.E.2d 231, 234-35 (1981). Under this approach, the function of the trial court is merely to determine whether the necessary elements of personal jurisdiction have been alleged in plaintiff's affidavit(s) and uncontradicted pleadings.[1] See *Cameron v. Owens-Corning Fiberglas Corp*, 296 Ill. App. 3d 978, 989, 695 N.E.2d 572, 579 (1998) (uncontradicted allegations of jurisdictional facts regarding conspiracy, when pled with sufficient specificity, are sufficient to provide the circuit court with jurisdiction); *Kutner*, 96 Ill. App. 3d at 247-48, 421 N.E.2d at 235. Once the court determines that the necessary elements establishing jurisdiction have been alleged in plaintiff's submissions, the trial court must find jurisdiction to have been established without further inquiry, even though the relevant facts in plaintiff's affidavit(s) are contradicted by defendant's counteraffidavit(s). Consequently, review of the trial court's determination is *de novo*, as it is made solely from the face of the documents with no weighing of evidence or determinations of credibility. See *Cox*, 271 Ill. App. 3d at 148, 648 N.E.2d at 275 ("[s]ince

---

[1] By "uncontradicted" we mean uncontradicted by an affidavit filed by defendant. Statements in plaintiff's pleadings that defendant does not controvert in his affidavit are taken as true. However, where defendant's affidavit contains factual assertions that vary from those in the complaint, the affidavit controls. Finally, however, if plaintiff files a counteraffidavit that contains statements at odds with any statements in defendant's affidavit, the assertions in plaintiff's counteraffidavit control. *Kutner*, 96 Ill. App. 3d at 247-48, 421 N.E.2d at 235.

the trial court did not hold an evidentiary hearing on the defendant's motion attacking its jurisdiction, our review of the issue is *de novo*"), citing *Mandalay*, 141 Ill. App. 3d at 895, 491 N.E.2d at 42 ("since there was no evidentiary hearing on defendants' motion to dismiss, we will independently determine whether defendants' contacts with Illinois are sufficient to subject them to the jurisdiction of the Illinois courts"), citing *Zeunert v. Quail Ridge Partnership*, 102 Ill. App. 3d 603, 607, 430 N.E.2d 184 (1981).

Several recent cases have departed from this position, holding that the plaintiff (or whatever party asserts personal jurisdiction exists) must establish jurisdiction by a preponderance of the evidence. See *Stein v. Rio Parismina Lodge*, 296 Ill. App. 3d 520, 695 N.E.2d 518 (1998); *Dilling v. Sergio*, 263 Ill. App. 3d 191, 195, 635 N.E.2d 590, 593 (1994); *Rokeby-Johnson v. Derek Bryant Insurance Brokers, Ltd.*, 230 Ill. App. 3d 308, 318, 594 N.E.2d 1190, 1197 (1992); *People ex rel. Hartigan v. Kennedy*, 215 Ill. App. 3d 880, 890, 576 N.E.2d 107, 113-14 (1991); *Finnegan v. Les Pourvoiries Fortier, Inc.*, 205 Ill. App. 3d 17, 25, 562 N.E.2d 989, 994 (1990). Under this approach, conflicts between the affidavits filed by plaintiff and defendant are not to be resolved in favor of plaintiff, but are to be tested and weighed. The standard of review under this line of authority is thus not *de novo*, but one of determining the manifest weight of the evidence. *Dilling*, 263 Ill. App. 3d at 195, 635 N.E.2d at 593; *Rokeby-Johnson*, 230 Ill. App. 3d at 318, 594 N.E.2d at 1197; *Finnegan*, 205 Ill. App. 3d at 25, 562 N.E.2d at 994.

The seminal case for this second approach—indeed, the only authority cited by the other cases espousing the second approach—is *Finnegan*. *Finnegan*, in turn, relies upon the reasoning of Professor Michael in his treatise on Illinois procedure (3 R. Michael, Illinois Practice (1989)) (Michael). Professor Michael points out that *Kutner* and the other cases which hold that the plaintiff need merely establish a *prima facie* case are based solely on federal precedent.[2] According to Michael, "[t]he federal cases are, however, clearly inapplicable because of a difference in federal procedure." 3 Michael § 6.2, at 61. See *Finnegan*, 205 Ill. App. 3d at 25, 562 N.E.2d at 994. *Finnegan* observed, in reliance on Professor Michael, that whereas in federal courts personal jurisdiction is only preliminarily addressed before trial but may be fully litigated on the merits at trial (similar to summary judgment):

"in Illinois, the special appearance (Ill. Rev. Stat. 1989, ch. 110,

---

[2] As Michael observes, the cases "cite only each other or federal cases." 3 Michael § 6.2, at 61.

par. 2—301) is a defendant's 'sole opportunity to defeat the jurisdiction of the court.' (3 R. Michael, § 6.2, at 61.) We agree with Professor Michael's observation that:

> 'To extend [the federal] rule to Illinois *** is, at best, to reverse the burden of proof, and at worst [to] deprive the defendant of the constitutional right to due process of law by holding the defendant subject to jurisdiction whenever there is a conflict in the evidence without resolving that conflict.' (3 R. Michael, § 6.2, at 61.)" *Finnegan,* 205 Ill. App. 3d at 25, 562 N.E.2d at 993-94.

■ For the reasons expressed by Professor Michael[3] and amplified in *Finnegan,* we believe that as between the first approach, adhering to the *prima facie* test, and the second approach, which would require weighing the evidence, the latter is by far the more sensible and better reasoned. See *Finnegan,* 205 Ill. App. 3d at 25, 562 N.E.2d at 993-94. The latter approach also finds clear support in the plain language of section 2—301 of the Code. The statute requires the circuit court to consider "any evidence adduced upon disputed issues of fact" in ruling on objections to personal jurisdiction. 735 ILCS 5/2—301(b) (West 1996). And section 2—301 unequivocally implies that the circuit court may resolve issues of fact in ruling on such a motion, by virtue of its provision that "[n]o determination of any issue of fact in connection with the objection is a determination of the merits of the case or any aspect thereof." 735 ILCS 5/2—301(b) (West 1996).

■ We note that the *prima facie* standard would not be wholly discarded under the Michael/*Finnegan* approach. When the jurisdictional issue may be completely resolved from the face of the affidavits and pleadings, analysis need not go beyond the *prima facie* standard. However, this will only be the case when the relevant assertions are uncontradicted. In other cases, the proper mode of jurisdictional anal-

---

[3] As an aside, we note that a special appearance is not, strictly speaking, the " 'sole opportunity to defeat the jurisdiction of the court' " (*Finnegan,* 205 Ill. App. 3d at 25, 562 N.E.2d at 993, quoting 3 Michael § 6.2, at 61). A party may also contest jurisdiction by refusing to participate in a suit even to the extent of filing a special appearance, then collaterally attacking any default judgment entered against it. See *R.W. Sawant & Co. v. Allied Programs Corp.,* 111 Ill. 2d 304, 309, 489 N.E.2d 1360, 1363 (1986) (a defendant "can properly challenge a court's jurisdiction after a default judgment or order is entered"); 3 Michael § 10.7, at 127-28. However, the special appearance would seem to be the only means of contesting jurisdiction without risking a default judgment. 3 Michael § 10.7, at 127-28. A party cannot both file a special appearance and, if unsuccessful, subsequently attack a judgment collaterally. 3 Michael § 10.7, at 128.

ysis will be a two-step process incorporating the tests from both lines of cases. See 3 Michael § 10.4, at 123 ("[i]f the court can decide the issue from this material [the pleadings or other documents on file or affidavits] without weighing the affidavits, it may. If not the court has authority to hold an evidentiary hearing"); *Stein*, 296 Ill. App. 3d 520, 695 N.E.2d 518.

◼ As noted above, the statute clearly envisions the circuit court making findings of fact in determining jurisdictional issues. See 735 ILCS 5/2—301(b) (West 1996). Such findings of fact would be made after a hearing, at which the circuit court would receive the "evidence adduced upon disputed issues of fact." See 735 ILCS 5/2—301(b) (West 1996). But obviously, there would be no need for a hearing if the party asserting jurisdiction could not establish even a *prima facie* case. Accordingly, it would appear that the first question in ruling on a special appearance is whether plaintiff has established a *prima facie* case of jurisdiction through the untraversed pleadings, documents and affidavits. In making this determination, the circuit court must resolve in favor of the plaintiff (or other party urging jurisdiction) any conflicts between affidavits. Concomitantly, at this juncture the court must also accept as true any facts averred by the defendant (or other party opposing jurisdiction) that have not been contradicted by an affidavit submitted by plaintiff. See *Kutner*, 96 Ill. App. 3d 243, 421 N.E.2d 231 (affirming circuit court's determination that Illinois had no jurisdiction over defendant because defendant's affidavit alleged facts establishing that plaintiff had no *prima facie* case of jurisdiction). If plaintiff has failed to establish a *prima facie* case, the inquiry is at an end and the defendant's motion should be granted. On appeal from an order dismissing a case on this basis our standard of review would be *de novo*, as it would involve "solely the application of law to undisputed facts." *Farmers State Bank v. Neese*, 281 Ill. App. 3d 98, 101, 665 N.E.2d 534, 536 (1996); see also *Nokomis Quarry Co. v. Department of Revenue*, 295 Ill. App. 3d 264 (1998) (*de novo* standard of review applies to administrative agency's determination when facts are undisputed); *People v. Bascom*, 286 Ill. App. 3d 124, 126-27, 675 N.E.2d 1359, 1361 (1997) (where facts and witness credibility are uncontroverted, a motion to suppress is reviewed *de novo*).

However, in most cases a determination that plaintiff has established a *prima facie* case of jurisdiction will not end the inquiry. If the trial court finds plaintiff has established a *prima facie* case, it must *next* determine whether there are any controverted jurisdictional facts. If so, it must hold a hearing to resolve these facts. *Stein*, 296 Ill. App. 3d at 523 (if there are disputes regarding issues of fact that "determine whether the court has personal jurisdiction, the trial court

must hear the testimony, evaluate its credibility, and resolve any material conflicts in the evidence"). Such a hearing should be granted in any case in which facts averred in the defendant's affidavits contradict the relevant facts in plaintiff's affidavit, *i.e.*, where defendant has established a *prima facie* case of a *lack* of jurisdiction. In those cases in which the circuit court holds a hearing and determines issues of fact, we will reverse the circuit court's result only if it is against the manifest weight of the evidence. *Stein*, 296 Ill. App. 3d 520, 695 N.E.2d 518.

Thus, whether plaintiff must establish merely a *prima facie* case or must establish jurisdiction by a preponderance of the evidence depends on the phase of the circuit court's analysis. First, the circuit court must determine whether plaintiff has established even a *prima facie* case for jurisdiction, resolving all conflicts in his favor. If plaintiff cannot meet even this minimal burden, there is no need to make any further inquiry. Nor is there any reason to proceed further if defendant has failed to contradict plaintiff's *prima facie* case. However, if there exists on the face of the affidavits a factual dispute, which if resolved in defendant's favor would preclude the imposition of jurisdiction, the court "must hear the testimony, evaluate its credibility, and resolve any material conflicts in the evidence" (*Stein*, 296 Ill. App. 3d at 523), requiring plaintiff to prove jurisdiction by a preponderance of the evidence.

This mode of jurisdictional inquiry in the circuit court and on appeal is in closest conformity with the statute (735 ILCS 5/2—301 (West 1996)) and the requirements of due process. It is also consistent even with the majority of the cases that purport to espouse a *prima facie* standard for establishing jurisdiction. In four of those cases plaintiff failed to establish a *prima facie* case; accordingly, there was no need to reach the second step in what we conclude to be the complete analysis. See *Alpert*, 235 Ill. App. 3d 452, 601 N.E.2d 1031; *Gordon*, 148 Ill. App. 3d 275, 498 N.E.2d 718; *Professional Group Travel*, 136 Ill. App. 3d 1084, 483 N.E.2d 1291; *Kutner*, 96 Ill. App. 3d 243, 421 N.E.2d 231. Two other cases determined that defendant was subject to jurisdiction based on *uncontroverted* facts. *D.S. America*, 274 Ill. App. 3d 643, 654 N.E.2d 472; *Cox*, 271 Ill. App. 3d 144, 648 N.E.2d 271. In these cases also, as noted above, there was no need for a hearing. One of the remaining cases was reversed by the supreme court. *Wiles*, 152 Ill. App. 3d 782, 504 N.E.2d 942, *rev'd*, 125 Ill. 2d 144, 530 N.E.2d 1382.

The remaining cases espousing the *prima facie* standard do appear to have exercised jurisdiction over nonresidents notwithstanding the presence of averments in the nonresidents' affidavits which, if true,

would have negated the residents' *prima facie* cases. See *Japax*, 186 Ill. App. 3d 656, 542 N.E.2d 792 (assertions by nonresident parent company that it did not control its resident wholly owned subsidiary nor did it ever contract in Illinois for advertising or decide where its products would be sold); *Mandalay*, 141 Ill. App. 3d 891, 491 N.E.2d 39 (assertions by nonresidents that their agent came to Illinois "only at the specific request of plaintiffs"); *Financial Management Services*, 130 Ill. App. 3d 826, 474 N.E.2d 1297 (assertions by nonresidents that their activities were conducted in their corporate capacities and were thus subject to protection under the fiduciary shield doctrine). With the analysis employed in these cases we simply disagree, for the reasons stated above. Due process requires a nonresident defendant to *have* the requisite connection with the forum state (the standard for which will be discussed below); it is not enough that the plaintiff simply *allege* that defendant has that connection when defendant states that the facts are otherwise. It is not acceptable to require a nonresident to defend itself against a claim when it has alleged facts that, if true, would negate jurisdiction, without determining what the facts are. See 3 Michael § 6.2, at 61 (to apply the *prima facie* standard in Illinois "is, at best, to reverse the burden of proof, and at worst [to] deprive the defendant of the constitutional right to due process of law by holding the defendant subject to jurisdiction whenever there is a conflict in the evidence without resolving that conflict"). Such a rule would allow a plaintiff to hale any defendant into court simply by filing one perjurious affidavit, which cannot be condoned. The two-step process that we have set out protects both the due process interests of nonresident defendants and Illinois courts' interests in judicial economy, where the latter can be served without sacrificing the former.

Finally, we recognize that in *Rollins v. Ellwood*, 141 Ill. 2d 244, 565 N.E.2d 1302 (1990), the circuit court decision under review had analyzed the issue of personal jurisdiction by the *Kutner prima facie* test and our supreme court did not explicitly criticize that approach. *Rollins*, 141 Ill. 2d at 255, 261, 565 N.E.2d at 1307, 1310. However, *Rollins* is reconcilable with our analysis for the same reason as *Alpert*, *Gordon, Professional Group Travel*, and *Kutner*: *Rollins* found that the plaintiff had not even established a *prima facie* case of jurisdiction. *Rollins*, 141 Ill. 2d at 263, 565 N.E.2d at 1310 (plaintiff "failed to present any evidence establishing" the relevant facts). There was no need for the court to determine what plaintiff's burden was, because the plaintiff failed to meet even the most minimal burden. Consequently, we do not read *Rollins* as endorsing an extreme *prima facie* approach, where a *prima facie* case ends the analysis, even if the facts are controverted.

## II. SUFFICIENCY OF JURISDICTIONAL CONTACTS[4]

## CONCLUSION

For the reasons above stated, we reverse the order of the circuit court dismissing the action and quashing service on J&B and remand for further proceedings.

Reversed and remanded.

CAHILL and BURKE, JJ., concur.

---

[4] The second issue to be addressed is whether TCA did in fact establish a *prima facie* case of personal jurisdiction over J&B. We conclude that TCA did establish a *prima facie* case. Because of the page limitations imposed under revised Supreme Court Rule 23 (166 Ill. 2d R. 23), we are compelled to delete our discussion of this issue from the published portion of this decision. However, our discussion of this issue is part of the unpublished portion of this decision.

In brief summary for the benefit of the reader of the published decision, we conclude that TCA established personal jurisdiction over J&B through the affidavit of Schelthoff. The operative facts are that J&B, through Bovell, affirmatively initiated an ongoing business relationship of approximately 19 months' duration by contacting Schelthoff in Illinois; Bovell expressed interest in J&B becoming TCA's sole distributor in the northeast; Bovell repeatedly placed purchase orders by placing telephone calls to an Illinois telephone number; and J&B received a 30% discount on at least some of its orders. These factors combine to establish that J&B "created 'continuing obligations' between [it]self and residents of" Illinois, making it "presumptively not unreasonable to require [it] to submit to the burdens of litigation in that forum as well." See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 85 L. Ed. 2d 528, 543, 105 S. Ct. 2174, 2184 (1985). We also find that J&B's attempt to portray itself as a mere "passive purchaser" (see *Chalek v. Klein*, 193 Ill. App. 3d 767, 550 N.E.2d 645 (1992)) is unavailing, primarily because of the ongoing nature of the relationship between TCA and J&B. A full, unabridged text of this decision is on file with the clerk of this court under docket No. 1—98—0252.