ROYAL EXTRUSIONS LIMITED, Plaintiff-Appellee, v. CONTINENTAL WINDOW AND GLASS CORPORATION, Defendant-Appellant.

First District (3rd Division)   No. 1—03—1200

Opinion filed June 23, 2004.

William J. Harte, of William J. Harte, Ltd., and Joseph E. Tighe, P.C., both of Chicago, for appellant.

James P. Ryther, Carol H. Poedtke III, and Richard A. Janney, all of Piper Rudnick, L.L.P., of Chicago, for appellee.

JUSTICE HALL delivered the opinion of the court:

The plaintiff, Royal Extrusions Limited, obtained a judgment against the defendant, Continental Window & Glass Corporation, in Canada. Thereafter, the plaintiff registered the judgment in the circuit court of Cook County and initiated enforcement proceedings. The defendant filed a petition pursuant to section 2—1401 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—1401 (West 2000)) to vacate the registration of the judgment. The circuit court denied the petition, and the defendant filed a timely appeal.

The sole issue on appeal is whether the Canadian court had personal jurisdiction over the defendant.

By way of background, the defendant, an Illinois corporation located in Chicago, is in the business of fabricating and installing windows with plastic frames made out of polyvinyl chloride (PVC). For reasons of profitability, the defendant operates, for the most part, within a 30-mile radius of its factory location.

The plaintiff is incorporated pursuant to the laws of Ontario, Canada, and is in the business of manufacturing and selling extruded building products, such as window profiles, made from PVC. These window profiles are typically used by companies, such as the defendant, to fabricate a window into a finished product. The plaintiff has no employees or offices in Illinois.

The parties had a business relationship commencing in 1994 and until 1998 or 1999. There is no dispute as to how business between them was conducted. To purchase product, the defendant would fax an order to the plaintiff in Canada. The plaintiff would ship the order accompanied by its invoice. The defendant would then remit the payment in dollars. There was no written contract between the parties other than the terms stated on the back of each invoice.

Based on the defendant's failure to pay for product it ordered and received from the plaintiff, the plaintiff sued the defendant for breach of contract in the Canadian courts. The defendant contested jurisdiction but the Master of the Superior Court of Justice—Ontario ruled against it. That ruling was upheld on appeal by the Superior Court of Justice—Ontario.

Thereafter, the defendant chose not to participate in the Canadian proceedings. The Canadian court awarded the plaintiff a judgment in the amount of $320,530.33, which included prejudgment interest.

On February 5, 2002, the plaintiff registered the Canadian judgment in the circuit court of Cook County. The plaintiff then initiated a citation to discover assets proceeding against the defendant. On May 16, 2002, the defendant filed a section 2—1401 petition to vacate the February 5, 2002, judgment order.

In the petition, the defendant asserted that it had no notice of the registration of the judgment until it was served with the citation to discover assets. It further asserted that it had a meritorious defense to recognition of the Canadian judgment. The petition was supported by the affidavit of Nick Gutu, the defendant's president, in which Mr. Gutu averred the following facts.

In 1993, Mr. Gutu met Tony Di Ginosa, a sales representative for the plaintiff, at a trade show in Stuttgart, Germany. Mr. Gutu visited the plaintiff's facility north of Toronto, Canada, where he met with Domenic Collito, the plaintiff's president. Messrs. Collito and Di Ginosa visited the defendant's facility in Chicago. Based on the discussions that took place in Chicago, Mr. Gutu agreed to begin purchasing product from the plaintiff.

In 1996, the defendant began experiencing problems with the plaintiff's products. Based on tests of the product, the plaintiff denied there was a problem. Because of customer complaints, the defendant incurred additional costs to replace windows. Mr. Gutu estimated that approximately $700,000 of the plaintiff's product was put into $2.1 million of finished product, which was sold and installed by the defendant and which is now the subject of the complaints. Mr. Gutu also claimed that the plaintiff had breached an exclusivity agreement between the parties by selling product to the defendant's competitors.

The plaintiff filed a response to the section 2—1401 petition, supported by reports of the Canadian proceedings and the affidavits of Messrs. Collito and Di Ginosa.

In his affidavit, Mr. Collito stated that Mr. Gutu had visited the plaintiff's facility in Canada and that he was informed that the defendant had an interest in forming a relationship with some of the Royal Group members for the purpose of purchasing product from them.[1] After these meetings, the plaintiff and defendant began doing business together. From 1998 through the end of 1999, the defendant continued to order product from the plaintiff but failed to pay for the product. The amount of the unpaid invoices totaled $237,965.67.

According to his affidavit, Mr. Di Ginosa averred that after the trade show in Germany, Mr. Gutu traveled to the plaintiff's facility to discuss purchasing product and that during these discussions, the parties reached an agreement to do business together. According to Mr. Di Ginosa, Mr. Gutu made an additional visit to the plaintiff's facilities in Canada prior to the parties reaching an agreement to do business together.

Following the arguments of counsel, the circuit court issued its memorandum decision and judgment denying the defendant's section 2—1401 petition.

The defendant filed a timely notice of appeal from the denial of its section 2—1401 petition.

## ANALYSIS

### I. Standard of Review

■ At the outset, the parties disagree as to the applicable standard of review.

Whether to grant a section 2—1401 petition lies in the sound discretion of the trial court. *Clay v. Huntley*, 338 Ill. App. 3d 68, 74, 787 N.E.2d 317 (2003). An abuse of discretion is found only if no reasonable person would decide as did the trial court. *Clay*, 338 Ill. App. 3d at 74.

In *Gaidar v. Tippecanoe Distribution Service, Inc.*, 299 Ill. App. 3d 1034, 702 N.E.2d 316 (1998), after noting the conflict over the standard of review applicable to a case dismissed for lack of personal jurisdiction, this court held that the manifest weight of the evidence standard would apply if the trial court heard testimony on jurisdictional issues but that a *de novo* standard of review applied when the trial court heard no testimony and determined jurisdiction solely on the basis of documentary evidence. *Gaidar*, 299 Ill. App. 3d at 1040.

---

[1]Mr. Collito explained that the plaintiff is a wholly owned subsidiary of Royal Group Technologies Limited.

In making the determination that the Canadian court had personal jurisdiction over the defendant, the circuit court did not conduct an evidentiary hearing. Therefore, review of the personal jurisdiction issue is *de novo*. See *Ruprecht Co. v. Sysco Food Services of Seattle, Inc.*, 309 Ill. App. 3d 113, 118, 722 N.E.2d 964 (1999). But see *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 116 Ill. App. 3d 1043, 452 N.E.2d 804 (1983) (standard of review does not change because the evidence is presented through affidavits).

## II. Discussion

■ A foreign judgment that is final and conclusive where it was rendered is conclusive between the parties, to the extent it grants or denies recovery of a sum of money, and is enforceable in the same manner as the judgment of a sister state, which is entitled to full faith and credit. 735 ILCS 5/12—619, 12—620 (West 2000). However, a foreign judgment is not conclusive if the foreign court did not have personal jurisdiction over the defendant. 735 ILCS 5/12—621(a)(2) (West 2000).

The question is whether Canada had personal jurisdiction over the defendant. The parties agree that question should be answered through the application of constitutional principles of due process.

■ In determining whether federal due process standards have been met, a court must consider the following three factors: (1) whether the nonresident defendant has sufficient minimum contacts with the forum state; (2) whether the cause of action arises out of these contacts; and (3) whether it is reasonable to require the defendant to litigate in the forum state. *Viktron Limited Partnership v. Program Data, Inc.*, 326 Ill. App. 3d 111, 121, 759 N.E.2d 186 (2001).

### A. Minimum Contacts

■ " 'The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant.' " *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144, 149-50, 530 N.E.2d 1382 (1988), quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 62 L. Ed. 2d 490, 497, 100 S. Ct. 559, 564 (1980). To subject a defendant to a judgment *in personam*, due process requires that the defendant have certain minimum contacts with the forum state such that maintenance of the suit there does not offend " 'traditional notions of fair play and substantial justice.' [Citations.]" *Wiles*, 125 Ill. 2d at 150.

The due process clause requires that a court exercise jurisdiction only over defendants with " 'contacts, ties, or relations' " with the forum State sufficient to provide them with fair warning their activities may subject them to suit there. *Wiles*, 125 Ill. 2d at 150, quoting

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 85 L. Ed. 2d 528, 540, 105 S. Ct. 2174, 2181 (1985). This " 'fair warning' requirement is met when a defendant has ' "purposefully directed" [its] activities at residents of the forum [citation] and the litigation results from alleged injuries that arise out of or relate to' those activities [citation].' " *Wiles*, 125 Ill. 2d at 150, quoting *Burger King*, 471 U.S. at 472, 85 L. Ed. 2d at 541, 105 S. Ct. at 2182. "Jurisdiction will only be proper where the contacts proximately result from actions by the *defendant himself* that create a 'substantial connection' with the forum State. [Citation.]" (Emphasis in original.) *Wiles*, 125 Ill. 2d at 151.

In *Autotech Controls Corp. v. K.J. Electric Corp.*, 256 Ill. App. 3d 721, 628 N.E.2d 990 (1993), the plaintiff, an Illinois company, entered into a contract for the sale of its products to the defendant in New York. During the course of the contract, the defendant placed telephone purchase orders and faxed written purchase orders to the plaintiff in Illinois. When the defendant failed to pay the balance due, the plaintiff filed suit in the circuit court of Cook County, and the defendant's president was served with summons in New York. The circuit court granted the defendant's motion to quash and dismiss the complaint.

On appeal, this court reversed, holding that the defendant's activities of maintaining the contractual relationship through its telephone and faxed purchase orders was sufficient to satisfy the due process requirement that the defendant have fair warning that it may be sued in Illinois. *Autotech Control Corp.*, 256 Ill. App. 3d at 725.

In *G.M. Signs, Inc. v. Kirn Signs, Inc.*, 231 Ill. App. 3d 339, 596 N.E.2d 212 (1992), the Illinois plaintiff manufactured signs. The parties met in Illinois as a result of a telephone call from the Missouri defendant's president to the plaintiff's president. The parties subsequently did business together, with the defendant initiating the transactions by phone call or written purchase order. In contesting jurisdiction, the defendant submitted an affidavit of its president averring that the defendant had no offices, bank accounts, property, business facility or affiliated entities located in Illinois. In addition, the plaintiff delivered the products, which were designed to the plaintiff's requirements, in Missouri, and the defendant paid for them either upon delivery or by mail from Missouri.

The reviewing court upheld the denial of the defendant's motion to dismiss for lack of jurisdiction. The court stated as follows:

> "We do not consider defendant to be in the category of an ordinary mail order consumer who merely orders a stock item of merchandise from another State. On the contrary, defendant was an 'active purchaser' who deliberately reached out beyond its home

State to avail itself of the benefits of commercial ties with an Illinois company. Its contacts with the forum State cannot reasonably be characterized as random, fortuitous, or attenuated. Defendant's actions should have enabled it to predict that it might be subject to the jurisdiction of this State. Plaintiff has a legitimate interest in using Illinois courts to enforce the obligations that defendant actively and knowingly undertook." *G.M. Signs, Inc.*, 231 Ill. App. 3d at 344-45.

The court concluded that the plaintiff had met its burden of showing that the defendant had sufficient contacts with Illinois to satisfy federal due process requirements. *G.M. Signs, Inc.*, 231 Ill. App. 3d at 345.[2]

The defendant argues that *G.M. Signs, Inc.* is distinguishable from the present case because, in that case, the defendant sought out the plaintiff, which had done no sales solicitation, and initiated the commercial relationship with the plaintiff.

In the present case, it is unclear who initiated the contact when the parties met in Germany. In ruling on the challenge to jurisdiction, the Master was unable to determine where the contract had been formed due to the conflicting evidence and, therefore, considered that factor to be neutral.

The defendant also distinguishes *Autotech Controls Corp.*, arguing that the court did not address the issue of whether Illinois was a convenient forum for the defendant in which to litigate. However, while the court did not specifically mention convenience, it referred to the requirement that the nonresident defendant present a "compelling case that the presence of other considerations would render jurisdiction unreasonable." *Autotech Control Corp.*, 256 Ill. App. 3d at 726. The court pointed out that the defendant had failed to meet its burden.

*Dilling v. Sergio*, 263 Ill. App. 3d 191, 635 N.E.2d 590 (1994), relied on by the defendant, is distinguishable. In that case, the reviewing court upheld a circuit court determination that the Illinois plaintiff had not established that the California defendant had minimum contacts with Illinois. The court determined that a telephone call, wherein the plaintiff law firm was retained to represent the defendant, was insufficient to establish minimum contact with Illinois, in light of the fact that the parties initially met in California, the defendant never went to Illinois, and the only other contact with Illinois was the defendant's letter to plaintiff in Illinois terminating the law firm's services.

---

[2]In *Autotech Controls Corp.* and *G.M. Signs, Inc.*, the federal and state due process analyses are intertwined.

In contrast, in the present case, the defendant sent many purchase orders to the plaintiff in Canada over the term of their relationship. Moreover, in *Dilling*, the court recognized that even a single transaction may suffice for jurisdiction, if the transaction gives rise to the cause of action and if the defendant purposefully availed itself of the privilege of conducting business in the forum state. *Dilling*, 263 Ill. App. 3d at 196.

## B. Cause of Action

The parties do not dispute that the cause of action in this case arose out of their agreement.

## C. Reasonableness

■ The Supreme Court has set forth five factors to guide courts in determining whether it is reasonable to require a nonresident defendant to litigate in a chosen forum: (1) the burden on the defendant of defending the action in the forum state, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining the most efficient resolution of the action, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the action, and (5) the shared interests of the several states in advancing fundamental social policies. *Viktron Limited Partnership*, 326 Ill. App. 3d at 123; *World-Wide Volkswagen Corp.*, 444 U.S. at 292, 62 L. Ed. 2d at 498, 100 S. Ct. at 564.

In connection with the last factor, when concerned with an international defendant, courts are to consider the procedural and substantive polices of those other nations whose interests would be affected by the assertion of jurisdiction by the forum court. *Wiles*, 125 Ill. 2d at 152. Concomitantly, the forum court must be mindful of the federal government's interest in maintaining its foreign relations policies. *Wiles*, 125 Ill. 2d at 152. "Quite clearly, therefore, '[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.' [Citations.]" *Wiles*, 125 Ill. 2d at 152-53.

The burden on a defendant forced to litigate in a foreign forum should always be the primary concern in any due process analysis. *Wiles*, 125 Ill. 2d at 152.

The defendant maintains that if it was forced to litigate in Canada, it would be unable to secure witnesses to testify on the merits of its argument that the plaintiff sold it a defective product. The defendant points out that its customers, who have no stake in the outcome, reside in Illinois and asserts that there would be difficulties in compelling them to testify in Canada. The defendant's competitors, who would be witnesses to the plaintiff's breach of the exclusivity agree-

ment, are also located in Chicago. Finally, the defendant's employees are located in Chicago, while its expert witnesses are located in the United States.

The defendant relies on *Lichon v. Aceto Chemical Co.*, 182 Ill. App. 3d 672, 538 N.E.2d 613 (1989), *appeal allowed sub nom. Aceto Chemical Co. v. J.D. Campbell Sales Ltd.*, 127 Ill. 2d 611, 545 N.E.2d 104 (1989). In *Lichon*, Campbell, an English company, shipped hazardous material from England for delivery to Aceto's customer in Iowa. While passing through Illinois, the truck carrying the material overturned, and the plaintiff suffered injuries. The circuit court dismissed Aceto's third-party action against Campbell for lack of personal jurisdiction. The reviewing court affirmed the dismissal.

After determining that minimum contacts existed, this court addressed whether it violated due process to require Campbell to litigate in Illinois. The court noted the vast distances between Illinois and England. The court recognized that Illinois had an interest in adjudicating all of the claims in one proceeding but that the dispute at issue was between Campbell and Aceto, which did not claim to be a citizen of Illinois. Moreover, it was unclear whether Illinois law would control the outcome. The court did consider that requiring Campbell to defend in Illinois would deter it from unsafe manufacturing processes and that Campbell did ship its products to the United States.

However, noting the federal government's interest in its relationship with England required the court to exercise great care and reserve in extending jurisdiction, the court concluded that the factors in favor of Illinois's jurisdiction were outweighed by the burden placed on Campbell. *Lichon*, 182 Ill. App. 3d at 686.

Once it has been established that the defendant purposefully directed his activities at the forum state, or as in this case country, the defendant must present a compelling case that litigating the dispute would be unreasonable. *Viktron Limited Partnership*, 326 Ill. App. 3d at 123. When a defendant enters the forum state, or as in this case country, in furtherance of a business transaction, it is not unreasonable or unduly burdensome to require the defendant to return and litigate there. *Viktron Limited Partnership*, 326 Ill. App. 3d at 123.

The "vast distance" between the parties in *Lichon* does not exist in this case. Unlike *Lichon*, the dispute in this case is between an Illinois company and a company located in Canada, our northern neighbor. In *Lichon*, the fact that the accident happened in Illinois was its only connection to the dispute, whereas in the present case, Mr. Gutu visited the plaintiff in Canada, the defendant's orders were sent to Canada, and the dispute involved the nonpayment of those orders.

■ Other factors also favor the Canadian court's exercise of personal jurisdiction over the defendant in this case. The plaintiff, as a Canadian company, has an interest in litigating in Canada, and the burden of transporting evidence falls on the parties, not the judicial system. See *Viktron Limited Partnership*, 326 Ill. App. 3d at 124; see also *Ruprecht Co.*, 309 Ill. App. 3d at 122 (Illinois, as the forum state, has an interest in making sure that its citizens are paid for goods they manufacture).

Illinois recognizes a public policy favoring the enforcement of contracts, and such a policy is served by allowing the victim of the breach of contract to assert a cause of action in the forum it chooses. *Viktron Limited Partnership*, 326 Ill. App. 3d at 125. While the defendant alleges that the plaintiff also breached the contract, after cross-examining Mr. Gutu on his affidavit submitted in the Canadian proceedings, the Master concluded that there would be more witnesses from the Toronto area than from Chicago.[3]

We conclude that the Canadian court had personal jurisdiction over the defendant in this case. Therefore, the circuit court properly denied the defendant's section 2—1401 petition.

The judgment of the circuit court is affirmed.

Affirmed.

---

[3]According to the Master's endorsement, cross-examination of Mr. Gutu on his affidavits revealed that "he had been somewhat overzealous in terms of how he had initially expressed himself."