SECOND DIVISION

November 30, 1999

No. 1-98-3917

RUPRECHT COMPANY, an Illinois corporation, ) Appeal from the

) Circuit Court

Plaintiff-Appellee, ) of Cook County

)

v. )

)

SYSCO FOOD SERVICES OF SEATTLE, INC., ) 

)

Defendant-Appellant ) 

)

(Budreck Truck Lines, ) Honorable

) Wayne D. Rhine,

Defendant). ) Judge Presiding

JUSTICE McNULTY delivered the opinion of the court:

Sysco Food Services of Seattle, Inc. (Sysco), a Delaware corporation, filed a petition for leave to appeal from an order of the circuit court denying Sysco's motion to quash service of process upon it for lack of personal jurisdiction.  We find that the circuit court should have held an evidentiary hearing to determine the nature of the transaction between the parties in order to decide whether the court could exercise jurisdiction over Sysco.  Accordingly, we reverse and remand for further proceedings.

Ruprecht Company (Ruprecht), an Illinois corporation, engaged in the meat wholesale business, filed a complaint for breach of contract against Sysco, a marketer and distributor of food-service products, and Budreck Truck Lines, Inc. (Budreck).  In count I of the complaint, Ruprecht alleged that it furnished cartons of fresh meat to Sysco as ordered and that Sysco refused to pay the invoices for the meat.  In count II of the complaint, Ruprecht alleged that it entrusted the cartons of meat to Budreck for shipment to Sysco and that Budreck failed to deliver the meat in good condition.  Ruprecht sought to recover $30,000, the value of the cartons of meat, from Sysco and Budreck.

Sysco filed a special and limited appearance and a motion to quash service of process upon it for lack of personal jurisdiction.  Sysco attached to its motion the affidavit of David Valentine, Sysco's vice-president of finance, wherein he stated that Sysco did not: (1) have any agents, employees, sales representatives or officers in Illinois; (2) hold any licenses, certificates or permits to conduct any business or other transactions in Illinois; (3) use or possess any real estate in Illinois; (4) own or possess a general place of business, a satellite office or any other facility, building or other improvement to real property in Illinois; (5) have a phone number or mailing address in Illinois; or (6) advertise in Illinois.  Valentine averred that the terms of the invoices for the meat were "F.O.B. Kent, Washington," and that, thus, the risk of loss passed within the State of Washington.  Lastly, Valentine stated that no agent of Sysco had ever met with Ruprecht in Illinois.

Ruprecht filed a response to Sysco's motion to quash summons to which Ruprecht attached the affidavit of its employee Walter E. Sommers.  In his affidavit, Sommers stated that Sysco required Ruprecht to set up a vendor account with Sysco.  It faxed Ruprecht a "New Product Information Form," a "Hold Harmless Agreement," a "New Vendor Information Form," and an "EEOC Certificate of Compliance" to complete before Sysco would make a purchase.  In addition, he claimed that Catherine Kayser, Sysco's vice-president of multi-unit sales, telephoned Ruprecht three times in Chicago to set up the vendor account.  

Sommers then stated that on April 6, 1998, Sysco faxed Ruprecht a purchase order for approximately 702 pounds of prime steak ready strips, 882 pounds of prime 190A beef tenderloin, and 156 pounds of prime top sirloin complete center cut.  On April 13, 1998, Sysco faxed Ruprecht another purchase order for approximately 634 pounds of prime steak ready strips, 875 pounds of prime 190A beef tenderloin, and 165 pounds of prime top sirloin complete center cut.  Sommers explained that to produce the prime steak ready strips, Ruprecht’s butchers trimmed strip steaks leaving only a one-eighth inch fat cover and less than a one-inch tail.  The order of prime 190A beef tenderloin entailed resizing the meat to less than five pounds apiece and packing 10 pieces in each box.  To produce the prime top sirloin complete center cut, Ruprecht’s butchers trimmed all fat from the meat, resulting in 65% waste, and packed six pieces of meat, each approximately eight pounds, in each box.  Sommers stated that Ruprecht produced all the items Sysco ordered according to Sysco’s strict specifications.  Prior to Sysco’s order, Ruprecht had never sold prime top sirloin complete center cut.  Lastly, Sommers stated that all of the modifications required by Sysco were done in Ruprecht's Chicago plant, after which the meat was shipped to Sysco in Seattle. 

Sysco then filed the affidavits of Kayser and Paul Opray,  Sysco's meat buyer, in support of its motion to quash service of process.  In her affidavit, Kayser stated that, in late March or early April 1998, she spoke on the telephone to Bob Christiansen,  a multi-unit sales representative for Sysco Food Services of Portland, Inc. (Sysco-Portland), and discussed a meeting he had attended in Portland, Oregon with Sommers, Chris Westcott, regional manager of McCormick and Schmick's (McCormick), and other representatives of McCormick and Sysco Food Services.  Sysco-Portland provides food service products to various McCormick restaurants in the Portland area.  Kayser maintained that Sommers had traveled from Chicago in order to meet with the McCormick and Sysco-Portland representatives and discuss the specific types of products and product packaging that Ruprecht provided.  

Kayser then stated that, after the meeting, Westcott telephoned her to discuss Sysco’s obtaining Ruprecht’s meats for McCormick’s Seattle-area restaurants and requested that she call Sommers about Ruprecht's products.  After speaking to Westcott, Kayser then called Christiansen to discuss the meeting in Portland and Sysco's possible arrangement with McCormick.  Kayser then telephoned Sommers in Chicago to tell him that Opray would contact him to place an order.  Kayser averred that this was her only conversation with Sommers and that she did not speak with any other Ruprecht representative. 

In his affidavit, Opray stated that he telephoned Sommers in Chicago to obtain some basic information used to complete vendor forms required by Sysco, including a certificate of insurance and a hold harmless agreement.  Sysco required all food-service suppliers to provide such information -- even if Sysco only expected to order products from the vendor once or on a limited basis.  After this initial telephone call, Opray and Sommers spoke on the phone briefly about two or three more times in order to finalize the vendor forms.  Some of the calls were initiated by Opray and some by Sommers. 

Opray claims that he did not spend much time discussing the meat products Sysco was going to order because Sommers had already established the specifications and packaging with McCormick at the Portland meeting.  Opray simply obtained a description of the products from Sommers and entered the information into Sysco's product database so that he could generate a purchase-order form.  Opray stated that although the meat products at issue were high quality, they were common prime cuts of beef that were available in many fine dining restaurants and steak houses and that dining establishments with a prime-beef program such as McCormick's required specifications similar or identical to the specifications for the products ordered from Ruprecht.  Lastly, Opray stated that he could obtain identical products from several meat companies in the Seattle market and that meat companies, such as Ruprecht, prepare these products on a daily basis. 

As noted above, the circuit court denied Sysco's motion to quash service of process.  The court  did so without holding an evidentiary hearing.  It then ordered that Sysco file an answer to the complaint or otherwise plead.

On appeal, Ruprecht maintains that the circuit court properly exercised jurisdiction over Sysco pursuant to the following portion of Illinois' long-arm  statute: 

 "(a)  Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1)  The transaction of any business within this State;

* * *

(7)  The making or performance of any contract or promise substantially connected with this State.”  735 ILCS 5/2-209 (West 1996).

Sysco contends that Ruprecht failed to meet its burden to establish personal jurisdiction because Sysco did not transact business in Illinois and was merely a passive purchaser of goods from Ruprecht.  Sysco also argues that it did not have the minimum contacts with Illinois that would justify exercise of jurisdiction over a nonresident consistent with the due process clause of the fourteenth amendment.  U.S. Const., amend. XIV. 

Since the circuit court did not hold an evidentiary hearing on Sysco's motion attacking its jurisdiction, our review of the issue is 
de novo
.  
Stein v. Rio Parismina Lodge
, 296 Ill. App. 3d 520, 523, 695 N.E.2d 518 (1998); 
International Business Machines Corp. v. Martin Property & Casualty Insurance Agency, Inc.
, 281 Ill. App. 3d 854, 858, 666 N.E.2d 866 (1996).  For this appeal, Ruprecht carries the burden of establishing a 
prima facie
 basis for personal jurisdiction through the pleadings, documents and affidavits.  
TCA International, Inc. v. B&B Custom Auto, Inc.
, 299 Ill. App. 3d 522, 531, 701 N.E.2d 105 (1998).  Since Ruprecht and Sysco both submitted affidavits to the circuit court, we will resolve conflicts between Sysco's affidavits and Ruprecht's pleadings and affidavit in Ruprecht's favor for purposes of determining whether Ruprecht has made a 
prima facie
 case for 
in personam
 jurisdiction.  
Stein
, 296 Ill. App. 3d at 523
. 

If we find that Ruprecht has made a 
prima facie
 case for 
in personam
 jurisdiction, we must determine whether Sysco's affidavits present grounds for a finding that personal jurisdiction does not exist.  If so, we must remand to the circuit court for an evidentiary hearing.  
TCA International
, 299 Ill. App. 3d at 531; 
Stein
, 296 Ill. App. 3d at 523.  It is not the function of this court, but that of the trial court, to weigh the evidence presented by the parties.  As we stated in 
Stein
:

"If the plaintiff's documentary evidence, including affidavits and depositions, contradicts the defendant's evidence on issues of fact that will determine whether the court has personal jurisdiction, the trial court must hear the testimony, evaluate its credibility, and resolve any material conflicts in the evidence.  735 ILCS 5/2-301(b) (West 1994)."  
Stein
, 296 Ill. App. 3d at 523.

After the trial court holds an evidentiary hearing, this court should defer to the trial court's findings, reversing the trial court's determination only if it is contrary to the manifest weight of the evidence.  
Stein
, 296 Ill. App. 3d at 523-24.

When determining whether the exercise of jurisdiction is proper over a nonresident defendant, the court applies a two-step test: (1) whether the facts of the case satisfy the statutory requirements of the long-arm statute and (2) whether jurisdiction is permissible under due process standards.  
Rollins v. Ellwood
,  141 Ill. 2d 244, 271, 565 N.E.2d 1302 (1990).  The court's analysis may begin with either step.  
Stein
, 296 Ill. App. 3d at 524. 

Although both the state and the federal constitutions contain due process guarantees, they are not coextensive.  
Rollins
, 141 Ill. 2d at 275.  Federal due process outlines a state’s outer jurisdictional limits (
Ideal Insurance Agency, Inc. v. Shipyard Marine, Inc.
, 213 Ill. App. 3d 675, 679, 572 N.E.2d 353 (1991)), requiring that a nonresident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" (
International Shoe Co. v. Washington
, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945), quoting 
Milliken v. Meyer
, 311 U.S. 457, 463, 85 L. Ed. 278, 283, 61 S. Ct. 339, 343 (1940)).  Illinois due process, however, dictates that a court may assert jurisdiction over a nonresident defendant only when "it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois."  
Rollins
, 141 Ill. 2d at 275.

   We first consider whether exercise of jurisdiction over Sysco is permissible under the Federal due process clause.  In 
Burger King Corp. v. Rudzewicz
, 471 U.S. 462, 471-72, 85 L. Ed. 2d 528, 540, 105 S. Ct. 2174, 2181-82 (1985), the Supreme Court explained that, under the due process clause, a court may exercise jurisdiction only over a defendant whose "contacts, ties, or relations" in a state sufficiently provided fair warning that the defendant' activities may subject him to suit there.   "[T]his 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, [citation], and the litigation results from alleged injuries that 'arise out of or relate to' those activities [citation]."  
Burger King
, 471 U.S. at 472, 85 L. Ed 2d at 540-

41, 105 S. Ct. at 2182.  This requirement permits nonresidents to structure their conduct with some degree of assurance as to whether they will be liable to suit in Illinois.  
Burger King
, 471 U.S. at 472, 85 L. Ed. 2d at 540-41, 105 S. Ct. at 2182.

While a resident's contract with a nonresident does not automatically establish minimum contacts in the resident's forum state (
Burger King
, 471 U.S. at 478, 85 L. Ed. 2d at 544, 105 S. Ct. at 2185), minimum contacts are satisfied when a nonresident "deliberately" has engaged in significant activities within the forum state or has established "continuing obligations" with residents of the forum state (
Burger King
, 471 U.S. at 475-76, 85 L. Ed. 2d at 542-43, 105 S. Ct. at 2183-84).  "[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."  
Burger King
, 471 U.S. at 474, 85 L. Ed. 2d at 541, 105 S. Ct. at 2183.   

Applying these principles to the case at bar, and construing the documentary evidence in favor of Ruprecht, we conclude that Ruprecht has made a 
prima facie
 showing that Sysco purposefully directed its activities at an Illinois corporation.  Sysco placed two orders of meat with Ruprecht.   Sysco prepared the orders for the meat and faxed them to Ruprecht in Chicago.  Sysco required that Ruprecht complete a number of documents prior to purchasing any meat from Ruprecht.  Sysco's employee called Ruprecht in Chicago to explain the documents and obtain the information Sysco required.  See 
Autotech Controls Corp. v. K.J. Electric Corp.
, 256 Ill. App. 3d 721, 725, 628 N.E.2d 990 (1993) ("Defendant's activities of maintaining the contractual relationship through its telephone and fax purchase orders is sufficient to satisfy [minimum contacts] requirements").

 Since we have determined that Ruprecht has presented a 
prima facie
 showing that Sysco purposefully established minimum contacts with Illinois, we now must ascertain whether an assertion of jurisdiction would conform with "fair play and substantial justice."  
International Shoe
, 326 U.S. at 320, 90 L. Ed. 104, 66 S. Ct. at 160.  The relationship between Sysco and Illinois must be such that "it is reasonable *** to require the corporation to defend the particular suit which is brought there."  
International Shoe
, 326 U.S. at 317, 90 L. Ed. 2d at 102, 66 S. Ct. at 158.  In determining whether it is reasonable, we may consider the following factors: (1) Illinois' interest in adjudicating the dispute, (2) Ruprecht's interest in obtaining convenient and effective relief, (3) the interstate judicial system's interest in obtaining the most effective resolution of controversies, and (4) the states' shared interest in furthering social policies.  
World-Wide Volkswagen Corp. v. Woodson
, 444 U.S. 290, 292, 62 L. Ed. 2d 490, 498, 100 S. Ct. 559, 564 (1980).  
 In 
Chalek v. Klein
, 193 Ill. App. 3d 767, 550 N.E.2d 645 (1990), this court adopted the distinction between active purchasers and passive purchasers used in cases from other jurisdictions to determine when it is fair and reasonable to require that a nonresident defend an action in a forum state.  We summarized this approach as follows:

"[I]f the nonresident buyer is a passive party who merely places an order by mail, telephone, or to a salesperson and accepts the seller's price as stated in advertising or other forms of solicitation, the courts of the seller State will not be able to exercise 
in personam
 jurisdiction over the buyer.  [Citations.]  If the buyer departs from a passive role by dictating or vigorously negotiating contract terms or by inspecting production facilities, the unfairness which would be associated with the exercise of long arm jurisdiction over that buyer dissipates, and he or she will be subject to personal jurisdiction in the courts of the seller's State.  [Citation.]

The type of conduct which would characterize an active purchaser is far more typical in dealings between major business organizations than in transactions in which a consumer or even a small shopkeeper is the purchaser.  [Citation.]  Distinguishing between active and passive purchasers therefore protects the ordinary mail order consumer who merely orders an item of merchandise from a company in a distant State from having to submit to the jurisdiction of the courts of that State while at the same time it protects sellers who manufacture custom-built products according to a nonresident buyer's specifications."  
Chalek
, 193 Ill. App. 3d at 773.

Reading the documentary evidence in the light most favorable to Ruprecht, we believe Ruprecht has presented a 
prima facie
 case that Sysco was an active purchaser of goods from an Illinois seller.  Both of Sysco’s meat orders required that Ruprecht produce certain cuts of meat according to Sysco’s specifications. Sommers states in his affidavit that Ruprecht had never before sold one cut of the kind of meat that Sysco ordered.  Sysco also specified in detail the packaging that it wanted Ruprecht to use for the meat.  Lastly, the prices listed on Sysco's orders and on Ruprecht's invoices differ, with some of the prices being higher and one lower.  This indicates that the parties may have actively negotiated the price of the different cuts of meat.  

Sysco may not claim surprise at being called to defend an action in Illinois for the nonpayment of goods that it required Ruprecht to produce according to specifications.  Ruprecht has an interest in obtaining convenient and effective relief for Sysco's failure to pay.  Illinois also has an interest in making sure that its citizens are paid for goods that they manufacture.

Our decision in 
Chalek
 now is read in conjunction with 
Rollins
; therefore, the distinction between passive and active purchasers also applies to whether it is fair, just, and reasonable to assert jurisdiction over a nonresident defendant as required by the Illinois Constitution.  
G.M. Signs, Inc. v. Kirn Signs, Inc.
, 231 Ill. App. 3d 339, 343-44, 596 N.E.2d 212 (1992).  We have already established that Ruprecht made a 
prima facie
 showing that Sysco was an active purchaser.  Further, we have outlined above the quality and nature of Sysco's acts that occurred in Illinois or that affected interests located in Illinois.  We believe these facts establish that Ruprecht has made a 
prima facie
 showing it is fair, just, and reasonable to require Sysco to defend an action in Illinois.

We now consider whether Ruprecht made a 
prima facie
 showing that the circuit court could assert personal jurisdiction over Sysco by means of the Illinois long-arm statute.   Sysco entered into two contracts with an Illinois resident for the sale of meat produced according to Sysco's specifications.  The modifications required by Sysco were made at Ruprecht's plant in Illinois, and the meat was shipped from Illinois.  In light of the documentary evidence, we believe Ruprecht has made a 
prima facie
 showing that Sysco entered into a contract substantially connected with Illinois.

We believe also that Ruprecht has made a 
prima facie
 showing that Sysco transacted business in Illinois.  In 
Ideal Insurance
, 213 Ill. App. 3d at 680-81, we summarized 
the factors to be considered in determining whether a defendant has transacted business in Illinois:

"To constitute the 'transaction of any business' within this State, a defendant must voluntarily seek the benefits and protections of the laws of this State.  [Citation.]  Section 2-209(a)(1) requires, essentially, that a plaintiff's claim lie in the wake of the commercial activities by which the defendant allegedly submitted to the jurisdiction of Illinois courts.  [Citation.]  Only the acts of the defendant are considered when determining whether business was transacted in Illinois.  [Citation.]

The determination of whether a defendant sufficiently transacted business in Illinois so as to avail himself of the benefits of Illinois law requires consideration of several factors, including who initiated the transaction, where the contract was entered into, and where the performance of the contract was to take place.  [Citation.]  While none of these factors is by itself controlling, each of them is significant, ***." 

In the case at bar, Kayser telephoned Sommers in Chicago and told him that Opray would contact him to place an order.  Opray then contacted Sommers to obtain certain information Sysco required of all new vendors.  Thus, it seems that Sysco initiated the transactions at issue.  In her affidavit, Kayser stated that Sommers attended a meeting in Portland to market Ruprecht's products to McCormick and Sysco-Portland.  She stated further that she contacted Sommers when asked to do so by Westcott.  However, her affidavit indicates that she did not attend the meeting; therefore, she does not have personal knowledge as to who attended the meeting, who initiated the meeting, and the purpose of the meeting.  We cannot take Kayser's statements regarding the meeting as true.  See 
Kutner v. DeMasa
, 96 Ill. App. 3d 243, 249, 421 N.E.2d 231 (1981)
(court disregarded plaintiff's affidavit where it was not based on personal knowledge and it did not affirmatively show that plaintiff, if sworn as a witness, could competently testify to facts alleged in the affidavit).

Sysco faxed the orders to Ruprecht in Illinois.  Ruprecht accepted Sysco's offer to purchase the meat by following Sysco's specifications, boxing the meat as required and shipping the meat to Sysco.  Thus, the contracts for the sale of the meat were entered into in Illinois.  The prices on the orders faxed by Sysco were crossed out and new prices inserted.  The possibility exists that Ruprecht inserted the new prices and that Sysco accepted Ruprecht's counteroffer in Washington.  However, at this stage of the proceedings, all inferences are to be in Ruprecht's favor.

Sommers stated in his affidavits that Ruprecht performed in Chicago all modifications required to comply with Sysco’s specifications.  Ruprecht packaged the meat in Illinois and shipped the meat to Sysco from Illinois.  In his affidavit, Valentine stated that the meat was delivered "F.O.B. Kent, Washington."  We cannot say that this factor alone was sufficient to defeat a 
prima facie
 showing Sysco transacted business in Illinois.

We conclude that Ruprecht has made a 
prima facie
 showing that the circuit court properly exercised 
in personam
 jurisdiction over Sysco.  We find, however, that certain crucial statements in Sommers' affidavit are contradicted by statements in Sysco's affidavits.  In particular, Opray stated in his affidavit that the meat products at issue were common cuts of beef available in many fine dining restaurants and steak houses and that he could obtain identical products from several meat companies in the Seattle market.  Further, Opray stated that he  obtained a description of the products from Sommers and entered the information into Sysco's product database so that he could generate a purchase order form.  We also note that the meat products were identified by manufacturer identification numbers on the order forms.  Opray's statements, taken together with the identification numbers on the order forms, indicate that the meat products were not "custom manufactured" for Sysco.  Lastly, the affidavits do not account for the changed prices on the faxed orders.  If Ruprecht changed the prices and faxed the orders back to Sysco, the contract may not have been formed until Sysco accepted the new prices in Washington.

A hearing is necessary for the circuit court to weigh the evidence on jurisdiction.  Accordingly, we reverse the order of the circuit court denying Sysco's motion to quash service of process and remand for further proceedings.

GORDON and McBRIDE, JJ., concur.