# Illinois Official Reports

## Appellate Court

---

### *In re Parentage of W.J.B.*, 2016 IL App (2d) 140361

---

| | |
|---|---|
| Appellate Court Caption | *In re* PARENTAGE OF W.J.B., a Minor (William B., Petitioner-Appellee, v. Rachel H., Respondent-Appellant). |
| District & No. | Second District<br>Docket No. 2-14-0361 |
| Filed | December 15, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 14-F-171; the Hon. Linda E. Davenport, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Megan C. Harris, of Mirabella, Kincaid, Frederick & Mirabella, LLC, of Wheaton, for appellant.<br><br>James W. Hanauer, of Wheaton, for appellee. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices Schostok and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1    Petitioner, William B., filed a parentage petition in Du Page County to establish a parent-child relationship with the minor, W.J.B., pursuant to the Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (West 2012)). Respondent, Rachel H., filed a motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2012)), alleging lack of both personal and subject-matter jurisdiction. The trial court found that it had jurisdiction over respondent and entered a preliminary injunction preventing respondent from removing the minor from the State of Illinois. Respondent filed a petition for leave to appeal, pursuant to Illinois Supreme Court Rule 306(a)(5) (eff. Feb. 26, 2010), which we granted. The sole issue raised on appeal is whether the trial court erred in finding that it had personal jurisdiction over respondent. We affirm.

¶ 2                                              I. BACKGROUND

¶ 3    The parties are the natural parents of the minor, who was born on April 25, 2011. The parties are not married. Petitioner is a resident of Illinois. On February 28, 2014, petitioner filed a petition to establish parentage.

¶ 4    Respondent filed a motion to dismiss the petition on March 25, 2014, for lack of personal and subject-matter jurisdiction, alleging the following. Respondent is a resident of North Carolina, and the minor resided there with her. Respondent underwent emergency surgery due to massive internal bleeding, and on October 5, 2013, the minor's paternal grandparents, who reside in Illinois, took the minor to Illinois to allow respondent time to rest and recover after her surgery. They agreed to allow the minor to stay with them only on a temporary basis while she recovered. Respondent made arrangements to pick up the minor from the grandparents in December 2013; however, she agreed to extend his time there on a temporary basis to allow petitioner to visit with the minor while he was in Illinois for the Christmas holiday. Petitioner had been stationed in California due to his employment in the United States military. Respondent attempted to make arrangements to pick up the minor in February 2014, but the grandparents would not respond to her communications. Respondent finally picked up the minor on March 15, 2014.

¶ 5    On March 28, 2014, petitioner filed an emergency motion for a temporary injunction and for an order to return the minor to Illinois.

¶ 6    On April 1, 2014, the trial court held an evidentiary hearing on respondent's motion to dismiss and on petitioner's motion for emergency relief. At the hearing, respondent testified that she had "significant surgery" at the end of September 2013. She spoke to petitioner on the phone about it, and he said that he would call his mother. The minor still lived with respondent until his grandmother and aunt flew out to North Carolina in October 2013 to pick up the minor and bring him to Illinois while respondent recovered from the surgery. When they discussed the minor's care, respondent told them that the minor would go out to visit with them for the time being but that he would be coming back. "They were helping me so that I had time to recover from the surgery that I had, because there would be bleeding for a long period of time, and that was our agreement, is that [the minor] would go to visit and he would come back." Respondent further testified that she wanted to pick up the minor after Christmas 2013, so that petitioner could visit him in Illinois while he was on furlough for the Christmas holiday.

However, she did not pick up the minor after the Christmas holiday because she was told that the weather was too bad and "there was too much snow."

¶ 7    On cross-examination, respondent testified that the minor resided with his grandparents from October 5, 2013, through March 15, 2014. During that time, respondent did not visit the minor at all. The surgery was performed on an outpatient basis at the end of September, and she was given three days off from work following the surgery.

¶ 8    Respondent stated that she was served with the parentage petition on March 13, 2014, and drove the following day to Illinois to pick up the minor. Respondent had a valid driver's license and an operational vehicle while the minor was in Illinois. Respondent further testified that, although her fiancé lived with her after her surgery, she chose to have the grandparents care for the minor.

¶ 9    Following respondent's testimony, petitioner requested a directed finding. Petitioner argued that, based on respondent's own testimony, this was more than just a visit; there was no timetable, and the pickup occurred only after she had been served on March 13. Respondent argued that the minor was here because, "by coming out to pick him up, [the grandparents] offered to watch him after [respondent's] surgery. There was certainly nothing that [respondent] has testified to that was a definitive act on her behalf to bring the child out to Illinois during that time in question."

¶ 10    In granting the directed finding, the trial court noted that section 201 of the Illinois Uniform Interstate Family Support Act (Act) (750 ILCS 22/201 (West 2012)) provides the bases for jurisdiction over a nonresident when a parentage action is brought. The court pointed to section 201(a)(5) of the Act (750 ILCS 22/201(a)(5) (West 2012)), which applies if the child resides in this state as a result of the acts or directives of the nonresident.

¶ 11    In applying section 201(a)(5), the court noted that respondent testified that, in the summer of 2013, she drove to Ohio to meet the paternal grandparents part way so that they could bring the minor to Illinois. "Thereafter, [respondent] entered into an agreement, allegedly, with the natural father and the paternal grandparents to have the child placed here in Illinois. Under her testimony, it was for a visit, a five and a half plus month visit. When [respondent] had a couple days off work for the surgery, she apparently could have come, she had a functioning car, [and] she did not." The court further stated: "When [respondent's] position in her testimony was that there was no reason for [respondent] to [pick up the minor] when [she] thought [petitioner] was going to be home after Christmas, that's from October 5th through December 25th. That means in January and in February, and then for the first two weeks of March, [respondent] still did not come. She took no steps to try to retrieve the child, at all, that I heard testimony of today. So I believe under section [201(a)(5)] that [respondent] did have specific acts or directives that placed the individual within *in personam* jurisdiction of Illinois for the purposes of going forward on the petition." Accordingly, the court denied the motion to dismiss and granted the motion for a directed finding.

¶ 12    Respondent orally moved to reconsider, asking that the court consider *Kulko v. Superior Court*, 436 U.S. 84 (1978). The court denied the motion, finding *Kulko* "dramatically different" from the case at bar.

¶ 13    The court then addressed the petition for temporary injunctive relief. Respondent did not participate in that portion of the proceedings because she did not want to waive her jurisdictional argument. Based on petitioner's pleadings, the trial court entered an order preliminarily enjoining respondent from removing the minor from Illinois.

¶ 14    Pursuant to Rule 306(a)(5), we granted respondent's petition for leave to appeal. On appeal, respondent contends that the trial court improperly denied her motion to dismiss for lack of personal jurisdiction.

¶ 15                                    II. ANALYSIS

¶ 16    We initially address respondent's request to strike petitioner's statement of facts as containing argument, conclusory comments, and misstatements of fact. The motion is denied, but we emphasize that we are cognizant of the requirements of Illinois Supreme Court Rule 341(h)(6) (eff. Feb. 6, 2013). In resolving respondent's appeal, we have ignored any argumentative statements, conclusory comments, and misstatements of fact contained in petitioner's statement of facts.

¶ 17                              A. Standard of Review

¶ 18    We now turn to the appropriate standard of review after a trial court conducts an evidentiary hearing on the matter of personal jurisdiction. Respondent claims that the standard is "clearly erroneous." We disagree.

¶ 19    It is well understood that a plaintiff "bears the burden of making a *prima facie* showing that the trial court has personal jurisdiction over a nonresident defendant." *McNally v. Morrison*, 408 Ill. App. 3d 248, 254 (2011). "To determine whether the plaintiff has set forth a *prima facie* case for jurisdiction, the trial court must consider the uncontroverted pleadings, documents and affidavits, as well as any facts asserted by the defendant that have not been contradicted by the plaintiff." *Cardenas Marketing Network, Inc. v. Pabon*, 2012 IL App (1st) 111645, ¶ 28. When the trial court bases its decision solely on such documentary evidence, its dismissal of a case for lack of personal jurisdiction is reviewed *de novo*. *McNally*, 408 Ill. App. 3d at 254.

¶ 20    When material evidentiary conflicts exist, the trial court must conduct an evidentiary hearing to resolve those disputes. *Russell v. SNFA*, 408 Ill. App. 3d 827, 831-32 (2011). "[I]f there are disputes regarding issues of fact that 'determine whether the court has personal jurisdiction, the trial court must hear the testimony, evaluate its credibility, and resolve any material conflicts in the evidence.' " *TCA International, Inc. v. B&B Custom Auto, Inc.*, 299 Ill. App. 3d 522, 531-32 (1998) (quoting *Stein v. Rio Parismina Lodge*, 296 Ill. App. 3d 520, 523 (1998)). In the past, reviewing courts have applied the manifest-weight-of-the-evidence standard when the trial court conducts such an evidentiary hearing and hears testimony on jurisdictional issues. See, *e.g.*, *Royal Extrusions Ltd. v. Continental Window & Glass Corp.*, 349 Ill. App. 3d 642, 645 (2004); *TCA International*, 299 Ill. App. 3d at 532; *Ruprecht Co. v. Sysco Food Services of Seattle, Inc.*, 309 Ill. App. 3d 113, 119 (1999); *Gaidar v. Tippecanoe Distribution Service, Inc.*, 299 Ill. App. 3d 1034, 1039-40 (1998). Under this standard, the trial court's determination would be reversed "only when the opposite conclusion is clearly evident or where the factual findings upon which it is based are unreasonable, arbitrary, or not based on the evidence." *1350 Lake Shore Associates v. Randall*, 401 Ill. App. 3d 96, 102 (2010).

¶ 21    In addressing this precise issue in *Madison Miracle Productions, LLC v. MGM Distribution Co.*, 2012 IL App (1st) 112334, ¶¶ 33-39, the Appellate Court, First District, noted that, in the past, this court had applied the "clearly erroneous" standard to jurisdictional rulings that follow an evidentiary hearing. See, *e.g.*, *Dargis v. Paradise Park, Inc.*, 354 Ill. App. 3d 171, 177 (2004); *People ex rel. Waller v. Harrison*, 348 Ill. App. 3d 976, 979-80

(2004). In *Harrison*, we observed that, where a trial court conducts a hearing, is presented with disputed evidence, makes findings of fact, and applies legal principles to those factual findings, the resolution of a jurisdictional issue presents "a mixed question of law and fact," to which the "clearly erroneous" standard of review should apply. *Harrison*, 348 Ill. App. 3d at 979.

¶ 22    The *Madison Miracle* court pointed out that no other decision had applied the "clearly erroneous" standard to a trial court's ruling, following an evidentiary hearing, on the issue of personal jurisdiction. *Madison Miracle*, 2012 IL App (1st) 112334, ¶ 37. It observed that the "clearly erroneous" standard typically has been applied in the context of administrative proceedings, under the Administrative Review Law (735 ILCS 5/3-110 (West 2010)), to mixed questions of fact and law where deference is afforded to the highly specialized and technical expertise of administrative agencies. *Madison Miracle*, 2012 IL App (1st) 112334, ¶ 37. Of particular importance was our supreme court's statement that it had "limited the application of that standard to reviewing administrative decisions on mixed questions of fact and law." *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 542 (2007).[1] In fact, the supreme court noted that "[i]n all other civil cases, we review legal issues *de novo* and factual issues under a manifest weight of the evidence standard." *Id.*

¶ 23    The *Madison Miracle* court also pointed out that questions regarding the appropriate standard of review where the underlying determination involves both factual and legal issues have been the subject of a great deal of interest and analysis. *Madison Miracle*, 2012 IL App (1st) 112334, ¶ 38 (citing legal treatises). However, the *Madison Miracle* court concluded that it was "most appropriate to follow our supreme court's direction; *i.e.*, in 'civil cases, we review legal issues *de novo* and factual issues under a manifest weight of the evidence standard.' " *Id.* ¶ 39 (quoting *Samour*, 224 Ill. 2d at 542). We find the analysis in *Madison Miracle* persuasive and adopt its reasoning.

¶ 24                         B. Personal Jurisdiction Under the Act

¶ 25    In the present case, the trial court held an evidentiary hearing on the issue of personal jurisdiction and made factual findings. As such, we will review its relevant factual findings deferentially under the manifest-weight-of-the-evidence standard. Under the manifest-weight-of-the-evidence standard, "[a] reviewing court will not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn." *Best v. Best*, 223 Ill. 2d 342, 350-51 (2006). Reviewing courts afford such deference because the trial court, as the finder of fact, "is in the best position to observe the conduct and demeanor of the parties and witnesses." *Id.* at 350. The trial court's legal conclusions, including both its conclusions regarding the legal effect of its factual findings and its ultimate resolution of the issue of personal jurisdiction, are reviewed *de novo*. See *Madison Miracle*, 2012 IL App (1st) 112334, ¶ 39.

¶ 26    In relevant part, the Act provides that, in a proceeding to determine parentage, a tribunal of this state may exercise personal jurisdiction over a nonresident individual if certain conditions are met. Section 201(a)(5) subjects a nonresident individual to personal jurisdiction if "the

---

[1]The supreme court, however, has applied this standard in one other context, to allegations of discrimination in jury selection. *People v. Davis*, 233 Ill. 2d 244, 261-62 (2009).

child resides in this State as a result of the acts or directives of the individual." 750 ILCS 22/201(a)(5) (West 2012).

¶ 27    Respondent notes that the Act does not define "resides." Citing the definition used in the context of divorce proceedings, respondent maintains that, for a person to reside in a particular state, there must be a sense of permanency and intent to remain in that state. When analyzing the domicile of a child, the United States Supreme Court has indicated that the intent of the child's parent is critical. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). Accordingly, respondent surmises that a court should look to where the child's parent intended the child to remain permanently. Respondent further concludes that there must be some sort of "affirmative act," "pattern," or "course of conduct" to satisfy the "acts or directives" phrase set forth in section 201(a)(5) of the Act. 750 ILCS 22/201(a)(5) (West 2012). Respondent maintains that she did not intend the minor to reside in Illinois but merely acquiesced to him being there to visit for a period of time. She argues that she took no initiative to send the minor to reside in Illinois and made no attempt to transfer custody of the minor, either formally or informally.

¶ 28    The trial court found that respondent was not a credible witness and that the minor lived with his paternal grandparents as a result of respondent's acts or directives. The evidence supports the trial court's findings. Respondent contacted petitioner and allowed the grandparents to take care of the minor in Illinois while she recuperated from surgery. The so-called "visit" lasted over five months, even though the surgery was on an outpatient basis, respondent returned to work three days later, and she had a vehicle at her disposal at all times. The grandmother and aunt picked up the minor on October 5, 2013, and respondent did not retrieve the minor until March 15, 2014, after she had been served with the Illinois petition.

¶ 29    Respondent supports her argument with several cases from other states that have adopted equivalent versions of the Act. Petitioner responds that the cases may stand for general principles of law but that each case is governed by its facts, here the trial court's factual findings. We agree with petitioner. Respondent herself points out that, as suggested by the Comment to the Uniform Interstate Family Support Act (UIFSA) from which the Illinois provision was adopted, a determination of jurisdiction over a nonresident person must be examined in a case-by-case, fact-based manner, taking into account due process considerations. See Unif. Interstate Family Support Act § 201, Comment (Unif. Law Comm'n 1996).

¶ 30    In *Kulko*, the Supreme Court held that the mere acquiescence of the father to his daughter's desire to live with her mother in California was not enough to confer jurisdiction over the father in the California courts. *Kulko*, 436 U.S. at 101. In *Chautauqua County Department of Social Services v. Rita M.S.*, 943 N.Y.S.2d 332, 335-37 (App. Div. 2012), the parents asked for an out-of-state relative to care for the children and also executed legal documents effecting the transfer. The facts in the present case fall somewhere between those in *Kulko* and *Rita M.S.* Although respondent did not execute legal documents effecting the transfer, she did reach out to petitioner to have petitioner's mother take care of the minor in Illinois while respondent recovered from surgery. Respondent also gave no indication when she would retrieve the minor, and she did not do so until she was served more than five months later. Given these facts, it was reasonable for the trial court to infer that by respondent's acts or directives she intended the minor to reside in Illinois. Findings are against the manifest weight of the evidence if they are unreasonable, arbitrary, or not based on the evidence or if the opposite

conclusion is clearly evident. *Garden View, LLC v. Fletcher*, 394 Ill. App. 3d 577, 583 (2009). While the evidence of acts or directives is not overwhelming, when considered in light of all of the facts, it amounted to more than mere acquiescence. Accordingly, we cannot say that the trial court's findings are unreasonable, arbitrary, or not based on the evidence or that an opposite conclusion is clearly evident.

¶ 31                              C. Constitutional Due Process

¶ 32    Respondent next raises the constitutionality of exercising personal jurisdiction over her. Respondent relies on *Kulko*.

¶ 33    Federal due process requires minimum contacts with the forum state so that maintaining suit there does not offend traditional notions of fair play and substantial justice. *Russell v. SNFA*, 2013 IL 113909, ¶ 34. Such minimum contacts must be based on some act by which the defendant purposefully avails himself of the privilege of conducting activities in the state, thus invoking the benefits and protections of its laws. *Graver v. Pinecrest Volunteer Fire Department*, 2014 IL App (1st) 123006, ¶ 14. The requirement of purposeful availment exists so that a nonresident defendant will not be forced to litigate in a distant or inconvenient forum solely as a result of random, fortuitous, or attenuated contacts or the unilateral act of a consumer or third party. *Id.* Federal due process analysis considers whether (1) the nonresident defendant had minimum contacts with the forum state such that there was fair warning that he may be haled into court there, (2) the action arose from, or is related to, the defendant's contacts with that state, and (3) it is reasonable to require the defendant to litigate there. *Id.* ¶ 15. The factors to consider in evaluating reasonableness under the third prong include (1) the burden imposed on the defendant by requiring him to litigate in a forum where he does not reside, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in obtaining relief, and (4) the interests of other affected forums in the efficient judicial resolution of the dispute and the advancement of substantive social policies. *Russell*, 2013 IL 113909, ¶ 87.

¶ 34    The UIFSA was developed after *Kulko*, and case law notes that the UIFSA allows for long-arm jurisdiction as broad as is constitutionally permitted. See, *e.g.*, *Case v. Case*, 103 P.3d 171, 175 (Utah Ct. App. 2004).

¶ 35    We reject respondent's assertion that she was denied due process by the trial court's exercise of jurisdiction over her in light of the decision in *Kulko*, where the Supreme Court held that mere acquiescence by a custodial parent to a child's change of residence to another state will not confer personal jurisdiction over that parent in the new state. *Kulko*, 426 U.S. at 101. Where the minor is in this state pursuant to the acts or directives of the nonresident respondent (and not by her mere acquiescence), due process is satisfied. See *Daknis v. Daknis*, 719 N.Y.S.2d 134, 135 (App. Div. 2000) (applying New York's equivalent of section 201(a)(5) of the Act).

¶ 36    Additionally, where respondent sent the minor to Illinois and, for 5½ months, never visited him and never made any effort to retrieve him and where there is no evidence that she supported him in any way during that time, it was foreseeable that at some point either petitioner or his mother would seek some form of child support.

¶ 37                                   III. CONCLUSION

¶ 38          For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 39          Affirmed.