NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 250308-U

NO. 4-25-0308

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 28, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* S.M., a Minor | ) | Appeal from the |
| (The People of the State of Illinois, | ) | Circuit Court of |
|       Petitioner-Appellee, | ) | Fulton County |
|       v. | ) | No. 24JA13 |
| Sunshine M., | ) | |
|       Respondent-Appellant). | ) | Honorable |
| | ) | Curtis S. Lane, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Zenoff and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court's order prohibiting cannabis use (1) did not violate the Cannabis Regulation and Tax Act (410 ILCS 705/1-1 *et seq.*) (West 2024)) and (2) was not against the manifest weight of the evidence.

¶ 2    In May 2024, the State filed a neglect petition for S.M. (born May 2024). Following the admission of respondent, Sunshine M., to being found unfit in a previous case and failing to subsequently restore fitness, the trial court adjudicated the minor neglected. Following a dispositional hearing, the court made the minor a ward of the court. The court conditioned respondent's visitations with the minor on her testing negative for cannabis. On appeal, respondent argues the court's requirement violated the Cannabis Regulation and Tax Act (Act) (410 ILCS 705/1-1 *et seq.*) (West 2024)) and was otherwise erroneous. We affirm.

¶ 3                       I. BACKGROUND

¶ 4    In May 2024, the State filed a neglect petition pursuant to section 2-3(1)(b) and (c)

of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b), (c) (West 2024)), contending the minor's environment was injurious to her welfare. The petition alleged (1) respondent had been previously found unfit in Fulton County case No. 18-JA-42 and her fitness had not been restored, (2) respondent suffers from substance abuse issues impacting her ability to properly care for the minor, and (3) the minor's blood, urine, or meconium contained methamphetamine. In June 2024, the State filed an amended petition, adding the allegation respondent had failed to maintain a reasonable degree of care or concern for the minor's well-being. In August 2024, the trial court entered an order placing the minor in the temporary custody of the Illinois Department of Children and Family Services (DCFS).

¶ 5        In November 2024, the State filed a second amended neglect petition that amended a count unrelated to respondent regarding the minor's father, who is not a party to this appeal. In December 2024, respondent admitted to count I of the second amended petition that she had been previously found unfit in Fulton County case No. 18-JA-42 and her fitness had not been restored. The trial court entered an adjudicatory order finding the minor neglected.

¶ 6        In February 2025, a dispositional hearing was held. The trial court, without objection, admitted (1) a dispositional report from January 2025, (2) an integrated assessment from December 2024, (3) a service plan from December 2024, and (4) a copy of the minor's birth certificate into evidence. The dispositional report showed, on May 2, 2024, respondent tested positive for marijuana and methamphetamine at the time of the minor's birth. Additionally, the minor tested positive for methamphetamine and "evidenced withdrawal symptoms." According to the report, the caseworker learned in September 2024 respondent would be entering drug court services. The report showed intermittent contact issues between the caseworker and respondent; however, the caseworker was able to gain cooperation from respondent, assess her living

conditions as appropriate, and communicate successfully. The report described respondent as "easy to communicate [with] and responsive," and interactions that were "respectful and appropriate." The report stated respondent was ordered to complete (1) a substance abuse assessment, (2) random drug screenings, (3) a mental health assessment, and (4) parenting classes.

¶ 7        The report showed the caseworker spoke with Heather Postin, respondent's drug court officer. Postin told the caseworker that respondent had submitted to all of her random drug screenings and all were negative except for the presence of tetrahydrocannabinol (THC), "which [respondent] has a medical marijuana card for." Postin also stated respondent had not missed any meetings and was "doing great."

¶ 8        The report showed respondent had completed both a substance abuse and mental health assessment. Respondent had reportedly gone "above and beyond" during substance abuse treatment. The report noted respondent had been diagnosed with Post Traumatic Stress Disorder (PTSD) and Generalized Anxiety Disorder. Respondent had also disclosed a diagnosis of depression. However, no mental health treatment was recommended at the time due to respondent's substance abuse treatment. Respondent began attending supervised visits with the minor in January 2025. The caseworker described respondent's visits as "loving and nurturing." The report also stated respondent had not yet completed parenting classes.

¶ 9        The report also indicated the minor had experienced numerous medical complications at birth that required various medical interventions, including an open-heart surgery in July 2024. The minor had significantly improved and was "developmentally on target for her age." She resided in a foster placement, where she was "thriv[ing]." The caseworker concluded that "with time, consistent visitation, and parenting instruction; this relationship and attachment will continue to grow, and reunification will be successful."

¶ 10        No further evidence was provided by the State.

¶ 11        Counsel for respondent, by way of proffer, stated respondent was still participating in drug court and remained compliant. Counsel noted, however, there had been a "positive test that [respondent] ended up serving a sanction on, but she's back in compliance with her treatment, evaluations, and submitting to her random tests." Upon the trial court's inquiry, counsel stated respondent had tested positive for cocaine a week prior to the dispositional hearing.

¶ 12        The trial court entered a dispositional order, finding respondent unfit for reasons other than financial circumstances alone to care for the minor. The minor was made a ward of the court, with guardianship placed with DCFS. Respondent was ordered to comply with DCFS's directives. Regarding cannabis use, the court stated as follows:

"I'm additionally going to be adding—this individual— [respondent], you're in drug court. I don't care if you have a medical marijuana card or not. You're not gonna be ingesting THC. That's not gonna be happening. Drug court is a program basically for substance abuse issues. THC is a substance that is now, yes, legal, but so is alcohol. So, there will be no ingestion of THC whatsoever.

I'm also encouraging the agency—I'm not gonna change what I've already ordered relative to the discretion of drug testing. It's my understanding, review of the [dispositional report], *** that you're basically allowing drug court to do the drug testing. I think there need to be more than that, especially in light of the new evidence where she allegedly just tested positive for cocaine while she's literally in a drug court program.

So, there will be no ingestion of THC of any type. There will be, basically, additional drug testing, but that will still be under the discretion of the agency. If there are any positive drug drops, I guess, with the week corresponding of a visit, there will be no visits. If there are failures to complete drug drops through the agency, if there's refusals, there will be no visits that week.

*\*\**

[Respondent], I don't know what happened with the cocaine test, but that's not exactly promising. I understand you've been sanctioned for that. We're here because of substance abuse issues. I encourage you to please take drug court seriously. Obviously and hopefully you are because if you can't figure this out, the child's never gonna return home to you. Okay? So do your best, be honest with yourself. If you need some type of inpatient treatment again—which I think you left early because of a medical situation, as I understood it—go back. Okay? Because if, again, if you can't tackle that, you can't take care of a child."

¶ 13 Counsel for respondent and the trial court then had the following exchange:

"MR. COTTA [(RESPONDENT'S ATTORNEY)]: Your honor, I guess I would just ask for the record for the Court to reconsider its decision as it relates to [respondent's] THC consumption. I—

THE COURT: No.

MR. COTTA: Again, I just, if I can—

THE COURT: No. I don't care. She's in drug court. By itself, she has admitted in a criminal proceeding she has substance abuse problems. This is not a doctor's prescription. It's a doctor's suggestion you can use THC. Not gonna happen.

MR. COTTA: Again, I guess my request was only if I can get doctor's indication that she is under the care of a doctor who is recommending/prescribing, I would just ask the Court to reconsider its decision.

THE COURT: Denied. Thank you. Anything further, sir?

MR. COTTA: No, Your Honor."

¶ 14        In March 2025, respondent filed a motion to reconsider, arguing the trial court's visitation condition prohibiting her from consuming cannabis violated the Act. The court conducted a hearing, wherein respondent argued she had been unable to visit with the minor due to the court's order. She contended her inability to attend visits would, ultimately, impede her ability to reunite with the minor. The court, again, compared cannabis use to that of alcohol, recognizing both were legal. However, the court questioned how cannabis aided respondent's substance abuse recovery and, by analogy, referenced methadone, which was sometimes prescribed by a physician to dissipate "cravings."

¶ 15        Respondent testified she had "some type of" recommendation for medical cannabis. She stated she used the cannabis to alleviate chronic migraines, PTSD symptoms, and "severe night terrors." She admitted to having a substance abuse issue. She stated she has a prescription for "prazosin" for the night terrors. She stated an unnamed physician recommended medical

cannabis. She said the physician who prescribed the prazosin reviews her use of cannabis during appointments every three months. She confirmed medical records would show her supervised use of cannabis, and these records could be provided to her counsel.

¶ 16　　　　The trial court reiterated its comparison of alcohol to cannabis. The court noted the Act's language prohibited discrimination based on cannabis use in juvenile court cases but stated "drug court program[s] or substance abuse program[s] like drug court" can prohibit participants from using alcohol or cannabis, "and that's what this Court is going to do." The court denied respondent's motion but said it would reconsider the issue at the following permanency review hearing should medical records show respondent's cannabis use is "actually necessary rather than just switching it up for your methamphetamine use." The court stated it did not believe respondent was being truthful about communicating her cannabis use to her current physician.

¶ 17　　　　The trial court also took umbrage with respondent's assertion she was prevented from attending visits. The court stated, "All you gotta do is not use weed. What is more important: Seeing your daughter or using weed. Period. I take great issue with that." Referring to substance-abuse treatment, the court stated: "I think that program would be to get off substances that are not prescribed by a proper physician being regulated, which I don't believe that THC use is, so I do not accept the argument by counsel that I am preventing visits."

¶ 18　　　　This appeal followed.

¶ 19　　　　　　　　　　　　　　II. ANALYSIS

¶ 20　　　　On appeal, respondent argues the trial court erred when it conditioned visits on respondent abstaining from using cannabis because (1) the condition violated the Act's prohibition of discrimination provision, (2) it was an abuse of discretion for the court to rely on improper findings to override the Act's protections, (3) the condition contravened the Juvenile Court Act's

goals of visitation and reunification, and (4) the court arbitrarily placed visitation restrictions absent any harm or risk to the minor.

¶ 21                                    A. Act Claims

¶ 22        Respondent's first contention is the Act unambiguously provides she cannot be denied visitation with the minor because of her cannabis use. She argues her cannabis use is lawful because she possesses a medical cannabis card and uses it to treat migraines, PTSD, and night terrors. Her second contention is there was no evidence presented her cannabis use posed any danger to the minor and the Act required such a finding be shown by clear and convincing evidence. The provision of the Act respondent cites states as follows:

> "Neither the presence of cannabinoid components or metabolites in a person's bodily fluids nor possession of cannabis-related paraphernalia, nor conduct related to the use of cannabis or the participation in cannabis-related activities lawful under this Act by a custodial or noncustodial parent, grandparent, legal guardian, foster parent, or other person charged with the well-being of a child, shall form the sole or primary basis or supporting basis for any action or proceeding by a child welfare agency or in a family or juvenile court, any adverse finding, adverse evidence, or restriction of any right or privilege in a proceeding related to adoption of a child, acting as a foster parent of a child, or a person's fitness to adopt a child or act as a foster parent of a child, or serve as the basis of any adverse finding, adverse evidence, or restriction of any right of privilege in a proceeding related to guardianship,

conservatorship, trusteeship, the execution of a will, or the management of an estate, unless the person's actions in relation to cannabis created an unreasonable danger to the safety of the minor or otherwise show the person to not be competent as established by clear and convincing evidence. This subsection applies only to conduct protected under this Act." 410 ILCS 705/10-30(a) (West 2024).

¶ 23 Ordinarily, we review the trial court's dispositional order under a manifest weight of the evidence standard. *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008). However, respondent contends the issues related to the Act are matters of statutory interpretation and requests we review them *de novo*. Because respondent's first two claims argue the court violated the Act when it imposed a condition barring her from consuming cannabis, we must interpret the Act. "Issues of statutory interpretation are questions of law that are subject to *de novo* review." *Mercado v. S&C Electric Co.*, 2025 IL 129526, ¶ 21. Our supreme court has explained:

"When construing a statute, this court's primary objective is to ascertain and give effect to the intent of the legislature. [Citation.] The best evidence of legislative intent is the language of the statute, which should be given its plain and ordinary meaning. [Citation.] Because the statute is viewed as a whole, words and phrases must be construed in light of other relevant statutory provisions and not in isolation. [Citation.] Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. [Citation.] In determining legislative intent, a

court may consider not only the language of the statute but also the reason and necessity for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. [Citation.] Further, we must presume that the legislature did not intend to enact a statute that leads to absurdity, inconvenience, or injustice." *Lakewood Nursing & Rehabilitation Center, LLC v. Department of Public Health*, 2019 IL 124019, ¶ 17.

¶ 24 Accordingly, we begin by identifying the general purpose of the Act "as a general guide to the intent of the legislature in adopting particular language or provisions." *Id.* ¶ 19. The Act begins by stating:

"In the interest of allowing law enforcement to focus on violent and property crimes, generating revenue for education, substance abuse prevention and treatment, freeing public resources to invest in communities and other public purposes, and individual freedom, the General Assembly finds and declares that the use of cannabis should be legal for persons 21 years of age or older and should be taxed in a manner similar to alcohol." 410 ILCS 705/1-5(a) (West 2024).

Furthermore, the Act states, "In the interest of the health and public safety of the residents of Illinois, the General Assembly further finds and declares that cannabis should be regulated in a manner similar to alcohol," before listing a general regulatory outline analogous to alcohol regulations. *Id.* § 705/1-5(b). Thus, the general purpose of the Act was to legalize cannabis use by creating a regulatory scheme for cannabis similar to alcohol to alleviate burdens on law

enforcement, generate revenue, and endorse individual liberties.

¶ 25       When reviewing section 10-30(a) of the Act (*id.* § 10-30(a)), a pared down recitation of the first clause—relevant to the case at bar—states as follows: The use of cannabis by respondent, as a noncustodial parent, cannot form any basis for any action or proceeding in a juvenile court. When a term is not defined by the statute itself, a reviewing court may look to dictionary definitions to determine its ordinary and popularly understood meaning. Black's Law Dictionary (12th ed. 2024) defines "basis" as "an underlying fact or condition; a foundation or starting point." The term "action" has been previously defined as follows:

> " ' "The legal and formal demand of one's right from another person or party made and insisted on in a court of justice. An ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or punishment of a public offense. It includes all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication upon the right and its enforcement or denial by the court." ' " (Emphasis omitted.) *7-Eleven, Inc. v. Dar*, 325 Ill. App. 3d 399, 406 (2001) (quoting *Johnson v. St. Therese Medical Center*, 296 Ill. App. 3d 341, 347 (1998), quoting Black's Law Dictionary 28 (6th ed. 1990)).

Black's Law Dictionary (12th ed. 2024) currently retains a similar definition and adds, "More accurately, [action] is defined to be any judicial proceeding, which if conducted to a determination, will result in a judgment or decree."

- 11 -

¶ 26　　　　Therefore, the first clause of section 10-30(a) relevant to respondent prohibits her use of cannabis from being the underlying foundation or starting point for initiating the entirety of the juvenile court proceeding. Recall, the State's petition forming the basis for this case did not allege respondent's use of cannabis created an environment that was injurious to the minor's welfare. The petition did allege substance abuse issues, but the underlying substance of concern was methamphetamine. Furthermore, the admitted allegation pertains to respondent's previous finding of unfitness and her inability to regain fitness following that finding. Accordingly, this clause does not itself prohibit a juvenile court from ordering conditions related to respondent's cannabis use.

¶ 27　　　　The second clause prohibits the use of cannabis from being the underlying foundation or starting point for any adverse findings, evidence, or restrictions related to adopting a child, acting as a foster parent, or being found fit to adopt or foster a child. The proceedings here do not involve respondent adopting a child or acting as a foster parent, nor is she being considered for fitness to do the same. Therefore, none of these prohibitions from the second clause of section 10-30(a) are relevant to respondent's case.

¶ 28　　　　The third clause similarly prohibits the use of cannabis from being the underlying foundation or starting point for any adverse findings, evidence, or restrictions in proceedings related to guardianship, conservatorship, trusteeship, execution of a will, or management of an estate. The case *sub judice* is a juvenile neglect case pursuant to the Juvenile Court Act. It is not a guardianship, conservatorship, or trusteeship case, nor does it involve the execution of a will or management of an estate  pursuant to the Probate Act of 1975 (755 ILCS 5/1-1 *et seq.* (West 2024)), the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act (755 ILCS 8/101 *et seq.* (West 2024)), or the Illinois Trust Code (760 ILCS 3/101 *et seq.* (West 2024)). This

clause from section 10-30(a), therefore, is also not relevant to respondent's case.

¶ 29    The fourth clause modifies the previous three clauses by creating an exception to the previous proscriptions when an individual's use of cannabis either creates an unreasonable danger to the safety of a minor or that individual is shown to be incompetent by clear and convincing evidence. The final clause provides section 10-30(a) applies only to conduct protected under the Act. Because none of the initial clauses pertain to respondent's case on appeal, these modifying clauses are also not relevant.

¶ 30    Therefore, we find the trial court's order prohibiting respondent from using cannabis did not run afoul of the Act. Consequently, no showing that respondent's cannabis use created an unreasonable danger to the minor or that she was incompetent by clear and convincing evidence under the Act was required.

¶ 31                    B. Remaining Claims

¶ 32    Respondent next argues the trial court's order contravenes the Juvenile Court Act's provision that "[v]isitation shall not be denied as a method of attempting to punish the parent." Respondent cites section 2-28(2) of the Juvenile Court Act (705 ILCS 405/2-28(2) (West 2024)) for this proposition. However, this quote does not appear in section 2-28(2). In fact, this direct quote does not appear through a search of Westlaw generally. Our research has found marriage dissolution cases, for example, expounding that visitation privileges should not be leveraged to reward or punish either parent. See, *e.g.*, *In re Marriage of Solomon*, 84 Ill. App. 3d 901, 908 (1980); *In re Marriage of Kent*, 2016 IL App (3d) 150675-U, ¶ 71. However, respondent's proposition is a quotation to authority that is incorrect and does not exist.

¶ 33    Respondent goes on to contend the record showed her use of cannabis did not affect her parenting by citing positive reviews of her efforts and progress by the caseworker, drug court

- 13 -

staff, and her counselor. She notes she had complied with all drug testing, for which she tested negative except for THC. She contends the court's cannabis prohibition is punitive and not in the minor's best interest.

¶ 34    Additionally, she argues the trial court's determination her cannabis use was improper is entirely speculative. She contends the court's determination was not supported by specific findings her cannabis use interfered with her ability to attend visits with the minor or have a beneficial relationship with the minor. She notes, again, the dispositional report showed her progress in drug court and established she enjoyed a bond with the minor. She argues the court's decision to restrict visitation should she test positive for cannabis is arbitrary and contradicts her fundamental interest in having visits with the minor.

¶ 35    Respondent's remaining contentions are not matters of statutory interpretation and, thus, are not subject to *de novo* review. We will not reverse a trial court's ruling at a dispositional hearing unless it is against the manifest weight of the evidence. *J.W.*, 386 Ill. App. 3d at 856. A finding is against the manifest weight of the evidence when the opposite result is clearly evident. *In re Audrey B.*, 2015 IL App (1st) 142909, ¶ 32. Under this standard, a reviewing court will not substitute its judgment for that of the trial court on matters of the credibility of witnesses, the weight of the evidence, or the inferences to be drawn therefrom. *In re Parentage of W.J.B.*, 2016 IL App (2d) 140361, ¶ 25.

¶ 36    Respondent is correct when she notes, in her brief, that despite the trial court's neglect adjudication and dispositional order placing the minor in the custody of DCFS, she retains rights and responsibilities, "including, but not necessarily limited to, the right to reasonable visitation." 705 ILCS 405/1-3(13) (West 2024). The rights and responsibilities respondent cites are qualified immediately thereafter by the parenthetical phrase "(which may be limited by the

court in the best interests of the minor as provided in subsection (8)(b) of this Section)." *Id.* Section 1-3(8)(b) states it includes "the authority and duty of reasonable visitation, except to the extent that these have been limited in the best interests of the minor by court order." *Id.* § 1-3(8)(b). It is also true "[t]he conditions of a dispositional order must have some basis in the evidence." *In re K.S.*, 365 Ill. App. 3d 566, 570 (2006) (citing *In re Chyna B.*, 331 Ill. App. 3d 591, 597-98 (2002)).

¶ 37    We disagree with respondent's framing of the issues here. We recognize the evidence showed her caseworker, her counselor, and even drug court staff expressed pleasure with her progress. However, respondent takes the correlation of her cannabis use and the dispositional report's positive findings to show a causal relationship. There is no affirmative evidence her cannabis use contributed to her progress as illustrated in the report. In fact, the trial court addressed this very issue and stated it would revisit its ruling should respondent be able to provide evidence from her physician supporting these claims.

¶ 38    There is also no evidence the trial court's order prohibiting cannabis use was punitive. The court was very clear it was not prohibiting cannabis use to punish respondent or to prevent her from visiting the minor. The court was reasonably concerned with her maintaining sobriety by supplanting methamphetamine use with cannabis. The court's concerns here were not unfounded. Respondent proffered to the court she had tested positive for cocaine just prior to the dispositional hearing. It is clear from these proceedings that respondent's sobriety and success with substance abuse treatment will likely become outcome determinative in this case. The goal is for the minor to return home to respondent by her becoming a fit parent. The court is empowered by the Juvenile Court Act to enter orders "controlling the conduct of any party likely to frustrate the achievement of the goal." 705 ILCS 405/2-23(3) (West 2024). The court's determination to make respondent's visitations with the minor contingent on testing negative for cannabis was reasonable

and had some basis in the evidence. The court expressed concerns that respondent's cannabis use was not in alignment with her substance abuse treatment. We find the court's determination was not against the manifest weight of the evidence, as we cannot say the opposite conclusion is clearly evident. *Audrey B.*, 2015 IL App (1st) 142909, ¶ 32.

¶ 39                                    III. CONCLUSION

¶ 40           For the reasons stated, we affirm the trial court's judgment.

¶ 41           Affirmed.